[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 6, 2002
THOMAS K. KAHN
CLERK

————————————

Nos. 01-16189 & 01-16647

————————————

D. C. Docket No. 01-00441 CV-4-SPM

CUMULUS MEDIA, INC.,

Plaintiff-Appellee,

versus

CLEAR CHANNEL COMMUNICATIONS, INC.,

Defendant-Appellant.

————————————

Appeals from the United States District Court
for the Northen District of Florida

————————————

**(September 6, 2002)**

Before BIRCH and MARCUS, Circuit Judges, and FULLAM\*, District Judge.

MARCUS, Circuit Judge:

———————————

*Honorable John P. Fullam, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

Clear Channel Communications, Inc. ("Clear Channel") appeals from the district court's entry of a preliminary injunction in this trademark infringement suit. At issue is whether Clear Channel has infringed the rights of Cumulus Media, Inc. ("CMI") by identifying its Tallahassee, Florida radio station by the name "The Breeze." While Clear Channel asserts that CMI has abandoned its rights in the name, the district court found otherwise and preliminarily enjoined Clear Channel from using "The Breeze" to identify its radio station. After thorough review, we can find no error in the entry of the preliminary injunction and accordingly affirm.

I.

The facts relevant to this appeal are straightforward. The parties own and operate competing radio stations in the Tallahassee, Florida market: CMI operates WBZE-FM at 98.9 on the FM dial and Clear Channel operates WTLY-FM at 107.1.

In January 1994, CMI began using the name "The Breeze," along with a distinctive logo and trading style incorporating the name, to identify WBZE. Between 1994 and September 2000, CMI used "The Breeze" in many forms of advertising and promotion for WBZE radio broadcasts, including radio and television advertising, outdoor signage, business cards, cups, mugs, license plates,

t-shirts, post-it notes, and stickers. From 1998 to 2000 alone, CMI spent more than a million dollars in the advertising and promotion of "The Breeze."

In September 2000, CMI began identifying WBZE on the air as "Star 98" instead of "The Breeze" and announced the change through on-air advertisements. At the same time, CMI altered its music programming from "mainstream adult contemporary," which targets listeners twenty-four to fifty-four years old, to "hot contemporary," which targets a slightly younger demographic of eighteen to forty-nine year olds. Other aspects of WBZE's programming, such as its call-in shows, remained unchanged.

After the change, "The Breeze" name continued to appear on some WBZE materials, including, inter alia, a large outdoor sign at WBZE's headquarters, where listeners come to collect promotional awards, business cards used by WBZE management and sales representatives, and promotional materials such as cups and license plate holders. Third parties also apparently maintained a continuing association of "The Breeze" with WBZE. As recently as September 2001, a full year after WBZE's name change and a mere month before this suit commenced, the Arbitron rating agency, which measures radio audience market share, continued to credit WBZE if a listener reported listening to "The Breeze" in Tallahassee.

On October 8, 2001, approximately thirteen months after CMI's name change, Clear Channel changed WTLY's on-air name from "The Mix" to "The Breeze" and adopted a logo nearly identical to WBZE's "The Breeze" logo. Clear Channel, which spent more than $25,000 to promote WTLY as "The Breeze," announced the name change with on-air advertisements making statements such as "It's back … and it's now at 107.1 FM -- The Breeze" and "The Breeze has blown up the dial." One advertisement announced that "WTLY has completed the most comprehensive radio research study in the history of Tallahassee … and you told us you want The Breeze back … so we did exactly what you wanted …. The Breeze is back and on the air at 107.1 FM." WTLY uses a mainstream adult contemporary format, apparently similar to the one used by WBZE before its format change. The district court found that WTLY and WBZE appeal to substantially the same listeners (even after WBZE's format change) and seek to generate revenue from the same advertisers in the same geographic market.

CMI quickly learned of Clear Channel's use of "The Breeze." On October 12, four days after Clear Channel began identifying WTLY as "The Breeze," CMI filed a complaint in the district court against Clear Channel for trademark infringement and unfair competition in violation of § 43(a) of the Trademark Act of 1946 (Lanham Act), 15 U.S.C. § 1125(a); the Florida Deceptive and Unfair

4

Trade Practices Act, Fla. Stat. § 501.204 ("FDUTPA"); and Florida common law. On the same day, CMI forwarded a courtesy copy of the complaint to Clear Channel along with a cease and desist demand.

Six days later, on October 18, CMI filed a motion for a preliminary injunction. On October 24, the district court conducted a hearing on the motion, during which it received evidence from both parties. CMI submitted evidence aimed at showing its continuing use of "The Breeze." This evidence included cups, license plates, bumper stickers and other advertising items featuring "The Breeze" name; the business cards of WBZE managers showing "The Breeze" logo; and pictures of the large billboard outside the WBZE office depicting "The Breeze" logo. CMI also submitted an audio recording of an on-air conversation, recorded October 22, 2001, between the WBZE operations manager and an anonymous caller, who evinced confusion over WTLY's use of "The Breeze." Clear Channel submitted evidence as well, largely in the form of affidavits from its own employees stating their belief that CMI had changed WBZE's name from "The Breeze" to "Star 98."

On November 1, the district court issued its order. It found that CMI had made continuous, commercial use of "The Breeze" rather than abandoning it, and thus had continuing rights in the name under both FDUTPA and the Lanham Act.

5

It also found that Clear Channel had changed WTLY's name to "The Breeze" to divert audience market share from WBZE to WTLY and to trade off of preexisting public awareness of "The Breeze." It thus found that Clear Channel's use of "The Breeze" had been calculated to mislead substantial numbers of Tallahassee radio listeners into believing that WTLY's "The Breeze" was a continuation of (or somehow affiliated with) WBZE's "The Breeze." The district court further found that Clear Channel's use of the name had in fact confused Tallahassee radio listeners. Based on these findings, the district court concluded that CMI would likely succeed on its infringement and unfair competition claims. After further concluding that the balance of hardships and the public interest tipped in CMI's favor, the district court entered a preliminary injunction restraining Clear Channel from using "The Breeze" to identify WTLY or any WTLY broadcasts and from using or displaying any imitation of the trading style of WBZE's "The Breeze."

Immediately after the district court issued its preliminary injunction order, Clear Channel filed a notice of appeal, which is the basis of Appeal No. 01-16189, and moved the district court for a stay pending appeal. On November 2, the district court denied the stay motion.

On November 6, Clear Channel filed a motion for modification of the injunction, arguing that it was overbroad because it prevented Clear Channel from

6

making any use of "The Breeze" name, even "curative uses" designed to dispel confusion, such as identifying WTLY as "The Breeze 107.1" or "The New Breeze." Clear Channel also moved for a second hearing to submit testimony and other evidence, arguing that it had not been provided sufficient time to prepare for the hearing held on October 24. On November 20, the district court denied these motions and Clear Channel filed a second notice of appeal from these denials, which is the basis of Appeal No. 01-16647. We have consolidated Clear Channel's two appeals.

## II.

### A.

Clear Channel's sole argument in the district court was that CMI is not entitled to a preliminary injunction because it has abandoned "The Breeze" as a protectable trade name.[1] The district court rejected Clear Channel's abandonment

---

[1] During the October 24 hearing, Clear Channel's counsel conceded that "if they [CMI] were still using The Breeze, they could stop us. I wouldn't be up here arguing to the contrary." Clear Channel's position is that, because CMI has abandoned "The Breeze," it cannot succeed on the merits of its infringement claim. Clear Channel raised no argument in the district court regarding the other three prongs of the familiar preliminary injunction standard and does not challenge the district court's findings under them on appeal. See CBS Broad., Inc. v. Echostar Communications Corp., 265 F.3d 1193, 1200 (11th Cir. 2001) (to merit preliminary injunctive relief, movant must show that: (1) it has substantial likelihood of success on the merits; (2) it will suffer irreparable injury unless injunction issues; (3) threatened injury to movant outweighs possible injury

argument, finding that CMI had continued to make "continuing commercial use" of "The Breeze" even after the September 2000 name change.  Clear Channel contends on appeal that the district court erred as a matter of law because it continued to impose upon Clear Channel a "strict burden of proof" after Clear Channel established what it believes to be a prima facie case of abandonment. Leaving this burden on its shoulders, Clear Channel contends, contravenes our holding in E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc., 756 F.2d 1525 (11th Cir. 1985).  After careful review, we find no legal error in the district court's analysis.

We begin our review by noting how deferential it is.  Preliminary injunctions are, by their nature, products of an expedited process often based upon an underdeveloped and incomplete evidentiary record.  See Revette v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, 740 F.2d 892, 893 (11th Cir. 1984) (per curiam) ("[T]he grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts . . . .") (quoting Gray Line Motor Tours, Inc. v. City of New Orleans, 498 F.2d 293, 296 (5th Cir. 1974)).  As is usually the case, the trial court is in a far better position than this Court to evaluate that evidence,

_____

injunction may cause opposing party; and (4) injunction would not disserve public interest) (citing Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)).

and we will not disturb its factual findings unless they are clearly erroneous. See

CBS Broad., 265 F.3d at 1200; E. Remy Martin, 756 F.2d at 1529 ("Factual

findings . . . will be reversed only if clearly erroneous").

The expedited nature of preliminary injunction proceedings often creates not

only limits on the evidence available but also pressure to make difficult judgments

without the luxury of abundant time for reflection. Those judgments, about the

viability of a plaintiff's claims and the balancing of equities and the public interest,

are the district court's to make and we will not set them aside unless the district

court has abused its discretion in making them. See Ambrit, Inc. v. Kraft, Inc., 812

F.2d 1531, 1547 (11th Cir. 1987) ("We review the district court's order only for an

abuse of discretion; '[t]he trial judge's ability to formulate a decree tailored to deal

with the violations existent in each case is normally superior to that of any

reviewing court, due to his familiarity with [the] testimony and exhibits.'")

(alterations in original) (quoting United States v. Loew's, Inc., 371 U.S. 38, 52, 83

S. Ct. 97, 105-06, 9 L. Ed. 2d 11 (1962)); Revette, 740 F.2d at 893 ("The district

court's decision will not be reversed unless there is a clear abuse of discretion. This

Court will not review the intrinsic merits of the case.") (citations and quotations

omitted); Gray Line, 498 F.2d at 296 (noting that whether to grant a preliminary

injunction "requir[es] a delicate balancing of the probabilities of ultimate success .

. . with the consequences of immediate irreparable injury . . . . Weighing these considerations is the responsibility of the district judge . . . .").

Ordinarily, a district court's legal conclusions alone are subject to our de novo review. See CBS Broad., 265 F.3d at 1200; E. Remy Martin, 756 F.2d at 1529 ("[I]f the trial court has misapplied the law, then this court must review and correct the error without deference to that court's determination regarding the legal issue."). Only if we find that the district court has erred in its apprehension or application of the law will we subject the entirety of a preliminary injunction order to plenary review. See E. Remy Martin, 756 F.2d at 1529 ("If the lower court has misapplied the law, its conclusions are subject to our broad review.").

The district court found that CMI is likely to prevail on its claims because it has protectable rights in the name "The Breeze" and Clear Channel has used the name in a deceptive manner likely to mislead Tallahassee radio listeners.[2] We

---

[2]We focus only on federal law, because our analysis of CMI's Lanham Act claim renders unnecessary any consideration of CMI's FDUTPA claims at this stage of the case. See Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1256 (11th Cir. 2001) ("[W]e may affirm [the district court's] judgment 'on any ground that finds support in the record.'") (quoting Jaffke v. Dunham, 352 U.S. 280, 281, 77 S. Ct. 307, 308, 1 L. Ed. 2d 314 (1957)); see also Ambrit, 812 F.2d at 1535 n.6 ("[B]ecause of our disposition of the federal claims, we need not review the district court's handling of the state law claims."). The two elements CMI must prove under § 43(a) are that it has rights in "The Breeze" name and that those rights have been violated by a confusingly similar use of the name by Clear Channel. See Conagra, Inc. v. Singleton, 743 F.2d 1508, 1512 (11th Cir. 1984).

10

agree. CMI has clearly made use of "The Breeze" in commerce,[3] the name itself is at least suggestive (and perhaps arbitrary or fanciful) and thus protectable under § 43(a) without a showing of secondary meaning,[4] and we find no fault in the district court's conclusion that Clear Channel's use of that name is likely to cause confusion -- indeed, has already caused confusion -- among Tallahassee radio listeners.[5]

---

[3]While it appears that CMI has not registered "The Breeze" and thus cannot proceed under § 32 of the Lanham Act, 15 U.S.C. § 1114, it nonetheless may proceed under § 43(a), 15 U.S.C. § 1125, if it has made use of the mark in commerce.  See Montgomery v. Noga, 168 F.3d 1282, 1297 n.24 (11th Cir. 1999) ("It is well settled . . . that registration is not a prerequisite to an action under section 43(a).") (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 2757, 120 L. Ed. 2d 615 (1992)); Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 n.5 (11th Cir. 2001) ("'In the absence of registration, rights to a mark traditionally have depended on the very same elements that are now included in the statutory definition: the bona fide use of a mark in commerce that was not made merely to reserve a mark for later exploitation.'") (quoting Allard Enters., Inc. v. Advanced Programming Res., Inc., 146 F.3d 350, 357 (6th Cir. 1998)).

[4]See Coach House Rest., Inc. v. Coach & Six Rests., Inc., 934 F.2d 1551, 1559-60 (11th Cir. 1991) (inherently distinctive marks -- which include arbitrary or fanciful marks and suggestive marks -- are protectable under the Lanham Act without a showing of secondary meaning).

[5]Likelihood of confusion is a finding of fact subject only to clear error review.  See E. Remy Martin, 756 F.2d at 1529 ("In this circuit, a determination of likelihood of confusion . . . is a matter of fact that we may overturn only if clearly erroneous.") (citing Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc., 675 F.2d 1160, 1163 (11th Cir. 1982)).  To determine likelihood of confusion, a court looks

11

Clear Channel does not challenge these conclusions, but instead asserts the affirmative defense of abandonment, by which a defendant may demonstrate that a trademark plaintiff no longer holds the rights to a mark. Abandonment is trademark law's way of recognizing that "[t]rademark rights flow from use." Ambrit, 812 F.2d at 1550; see also Defiance Button Machine Co. v. C & C Metal Prods. Corp., 759 F.2d 1053, 1059 (2d Cir. 1985) ("A trademark or trade name . . . represents the reputation developed by its owner for the nature and quality of goods or services sold by him . . . .") (citing Prestonettes, Inc. v. Coty, 264 U.S. 359, 368, 44 S. Ct. 350, 351, 68 L. Ed. 731 (1924)) (other citations omitted).

_____

to seven factors: "(1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales method; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion." Alliance Metals, Inc. v. Hinley Indus., Inc., 222 F.3d 895, 907 (11th Cir. 2000). "The most persuasive evidence in assessing the likelihood of confusion is proof of actual confusion." Id. The district court here found that "[t]he likelihood of confusion factors weigh in Plaintiff's favor. Specifically, WBZE continued to be known as 'The Breeze' in the Tallahassee area. Defendant has adopted the same name and a strikingly similar mark for WTLY. WBZE and WTLY are directly competing stations, in the same geographic area, offering similar music formats directed to substantially the same audience. Defendant adopted the name 'The Breeze' and copied Plaintiff's trading style to increase its ratings and profit from false public association of Defendant's radio broadcasting services with the services offered by Plaintiff. There has also been actual confusion." On the evidence presented to the district court at the preliminary injunction hearing, these conclusions are not clearly erroneous.

If a mark holder stops using a mark with an intent not to resume its use, the mark is deemed abandoned and "falls into the public domain and is free for all to use. . . .   Abandonment paves the way for future possession and property in any other person."  J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §17:1 (4th ed. 2001); see also Abdul-Jabbar v. Gen. Motors Corp., 85 F.3d 407, 411 (9th Cir. 1996) ("Rather than countenancing the 'removal' or retirement of the abandoned mark from commercial speech, trademark law allows it to be used by another."); Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship, 34 F.3d 410, 412 (7th Cir. 1994) ("When a mark is abandoned, it returns to the public domain, and is appropriable anew . . . .").  Thus, a defendant who successfully shows that a trademark plaintiff has abandoned a mark is free to use the mark without liability to the plaintiff.

Under the Lanham Act, a protectable mark or name is considered abandoned if "its use has been discontinued with intent not to resume such use."  15 U.S.C. § 1127.[6]  A putative trademark infringer thus must prove two separate elements to

---

[6]The definition of abandonment given in § 1127 reads in full:

A mark shall be deemed to be "abandoned" if either of the following occurs:

(1) When its use has been discontinued with intent not to resume such use.  Intent not to resume may be

13

interpose the defense of abandonment successfully: that the plaintiff has ceased using the mark in dispute,[7] and that he has done so with an intent not to resume its use. See Citibank, N.A. v. Citibank Group, Inc., 724 F.2d 1540, 1545 (11th Cir. 1984); Emergency One, Inc. v. Am. Fireeagle, Ltd., 228 F.3d 531, 535 (4th Cir. 2000) ("[A] party claiming that a mark has been abandoned must show 'non-use of the name by the legal owner and no intent by that person or entity to resume use in the reasonably foreseeable future.'") (quoting Stetson v. Howard D. Wolf & Assocs., 955 F.2d 847, 850 (2d Cir. 1992)).

---

inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

(2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark. Purchaser motivation shall not be a test for determining abandonment under this paragraph.

15 U.S.C. § 1127.

[7]"Use" as contemplated by the definition of abandonment in 15 U.S.C. § 1127 requires more than mere token use: "'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark."

14

Because proving the subjective intent of a trademark holder may prove burdensome for a defendant, see Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980) ("intent is always a subjective matter of inference"), the Lanham Act provides two aids for demonstrating intent. First, it provides that "[i]ntent not to resume may be inferred from circumstances." 15 U.S.C. § 1127; see also Vitaline Corp. v. Gen. Mills, Inc., 891 F.2d 273, 275 (Fed. Cir. 1989) ("Although abandonment requires both non-use and intent not to resume use of the mark, the element of intent can be established inferentially by the same facts that establish non-use."). Second, it allows a showing of three years of consecutive nonuse to create a rebuttable presumption of intent not to resume use: "[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127.[8]

The district court rejected Clear Channel's abandonment defense, specifically finding that

_____

[8]Prior to January 1, 1996, nonuse for two consecutive years was prima facie evidence of an intent not to resume use. Pursuant to the Uruguay Round Agreements Act, § 45 of the Lanham Act, 15 U.S.C. § 1127, was amended, effective January 1, 1996, to require evidence of nonuse for three consecutive years to establish a prima facie case of abandonment. See Uruguay Round Agreements Act, Pub. L. No. 103-465, § 521, 108 Stat. 4809, 4981-82 (1994).

[c]onsiderable good will accrued to Plaintiff as a result of Plaintiff's promotion of "The Breeze." Plaintiff has kept up this association with "The Breeze" and the good will by using "The Breeze" logo on business cards and the sign at its broadcasting studio. Plaintiff's continuing commercial use of "The Breeze" goes beyond mere token use, thus going against a finding of abandonment.

On the basis of these factual findings, and noting that "Defendant bears a strict burden of proof," the district court concluded that Clear Channel was "not likely to succeed on the merits of its abandonment defense."[9] Abandonment is a finding of fact we review only for clear error, see On-Line Careline, Inc. v. America Online, Inc., 229 F.3d 1080, 1087 (Fed. Cir. 2000) ("Abandonment is a question of fact."); Rivard v. Linville, 133 F.3d 1446, 1449 (Fed. Cir. 1998) (same), and we cannot say the district court's finding is clearly erroneous on the preliminary record before us.[10]

---

[9]The district court also rejected Clear Channel's abandonment defense to CMI's FDUTPA claims: "Defendant's affirmative defense of 'abandonment' gives it no license to mislead consumers in the State of Florida in violation of the FDUTPA."

[10]Admittedly, evidence of CMI's use of "The Breeze" after WBZE's September 2000 name change was limited, consisting largely of a logo on a billboard, some business cards, and a few promotional materials, but it was sufficient to enable the trial court to reject Clear Channel's abandonment defense. This does not foreclose the possibility that, on a full record, the court may find that these items are simply vestigial holdovers from CMI's "Breeze" regime, evincing merely a haphazard transition to use of the "Star 98" name rather than an intent to continue using "The Breeze." But for our purposes today, the district court, after reviewing the evidence determined that these items were not merely vestigial and

16

Thus, were the district court's factfinding regarding abandonment the only concern pressed by Clear Channel, we could quickly put the issue to rest. But it is not. Hoping to circumvent the deferential standard of review afforded factual findings, Clear Channel asserts that the district court committed legal error in its allocation of the burden of proof on its abandonment defense. Clear Channel contends that rather than placing on it "a strict burden of proof," the district court should have shifted the burden of proof to CMI because Clear Channel had established a prima facie case of abandonment. Failure to do so, Clear Channel urges, deviates from the legal framework we set forth in E. Remy Martin for allocating evidentiary burdens where a prima facie abandonment case has been established. We are unpersuaded.

First, we note that the burden a defendant bears on the affirmative defense of abandonment is, in fact, "strict." See Conagra, Inc. v. Singleton, 743 F.2d 1508, 1516 (11th Cir. 1984); Citibank, 724 F.2d at 1545. Because a finding of abandonment works an involuntary forfeiture of rights,[11] federal courts uniformly

_____

were instead part of CMI's active use of "The Breeze." The district court did not commit clear error in making this finding of fact.

[11]If it were a voluntary forfeiture, there would be no litigation. See Imperial Tobacco Ltd. v. Philip Morris, Inc., 899 F.2d 1575, 1581 (Fed. Cir. 1990) ("In every contested abandonment case, the respondent denies an intention to abandon its mark; otherwise there would be no contest.").

17

agree that defendants asserting an abandonment defense face a "stringent,"

"heavy," or "strict burden of proof." See e.g., Moore Business Forms, Inc. v. Ryu,

960 F.2d 486 (5th Cir. 1992) ("stringent standard of proof"); Lipton Indus., Inc. v.

Ralston Purina Co., 670 F.2d 1024, 1031, 213 U.S.P.Q. 185, 191 (C.C.P.A. 1982)

("heavy burden"); Seidelmann Yachts, Inc. v. Pace Yacht Corp., 14 U.S.P.Q.2d

1497, 1501 (D.Md. 1989), aff'd 13 U.S.P.Q. 2d 2025 (4th Cir. 1990) ("Because

abandonment constitutes a forfeiture of a property interest, both non-use and intent

not to resume use must be strictly proved.").[12]

---

[12]There is disagreement about what this "strict burden" is. The Federal Circuit has held that it is nothing more than a talismanic phrase, requiring merely the preponderance of the evidence required to prevail on other civil issues. See, e.g., Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc., 892 F.2d 1021, 1024 (Fed. Cir. 1989) ("[W]e are unable to discern from the legislative history of the Lanham Act any intention by Congress to raise the burden of proof for . . . abandonment above the normal civil burden of a preponderance of the evidence."). Other courts have held that it requires proof by clear and convincing evidence. See, e.g., Emmpresa Cubana Del Tabaco v. Culbro Corp., -- F. Supp. 2d --, 2002 WL 1398563, *15 (S.D.N.Y. June 26, 2002) ("Because it constitutes a forfeiture of a property right, abandonment of a mark must be proven by clear and convincing evidence, and statutory aid to such proof must be narrowly construed.") (citations omitted); Chere Amie, Inc. v. Windstar Apparel, Corp., 191 F. Supp.2d 343, 349 (S.D.N.Y. 2001) ("A defense of abandonment must be proven by clear and convincing evidence.") (citations omitted); see generally McCarthy, supra, § 17:12 ("Since abandonment results in a forfeiture of rights, the courts are reluctant to find an abandonment. … [E]vidence of the elements of abandonment must be clear and convincing."). We have not had occasion to give detailed meaning to the term "strict burden," and need not do so now, because the outcome of this case is plainly the same whether we define a "strict burden" as requiring "clear and convincing evidence" or only a "preponderance of the evidence."

18

Second, Clear Channel has misapprehended our holding in E. Remy Martin. In E. Remy Martin, we held that once a defendant establishes a case of prima facie abandonment, "[t]he burden of proof then shift[s] to [the mark holder] to demonstrate that circumstances d[o] not justify the inference of intent not to resume use." 756 F.2d at 1532 (emphases added).[13] We did not specify in E. Remy Martin, nor have we since, what burden of proof shifts to the mark holder upon a prima facie showing of abandonment -- the burden of production or the burden of persuasion.[14] "The burden of proof typically has two elements: the burden of producing evidence and the burden of persuading the fact finder." Abilene Sheet Metal, Inc. v. NLRB, 619 F.2d 332, 339 (5th Cir. 1980).[15] Our

_____

[13]A prima facie showing simply means "evidence of such nature as is sufficient to establish a fact and which, if unrebutted, remains sufficient for that purpose." Hiram Walker & Sons, Inc. v. Kirk Lines, R. B. Kirkconnell & Bro., Ltd., 963 F.2d 327, 331 n.5 (11th Cir. 1992) (quoting Miller v. Norvell, 775 F.2d 1572, 1574 (11th Cir. 1985)); see also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 n.7, 101 S. Ct. 1089, 1094 n.7, 67 L. Ed. 2d 207 (1981) ("The phrase 'prima facie case' . . . describe[s] the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue.").

[14]It was unnecessary to resolve this question on the specific facts of E. Remy Martin, because we found that the mark holder could not meet even a burden of production, let alone a burden of persuasion. See 756 F.2d at 1532-33.

[15]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

19

choice of language in E. Remy Martin -- "burden of proof . . . to demonstrate" -- can be read as requiring either production or persuasion. Accord Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc., 892 F.2d 1021, 1025 (Fed. Cir. 1989) (noting that "burden to demonstrate" can be read either as burden of production or as burden of ultimate persuasion). Relying on E. Remy Martin in Ambrit, we held that a prima facie abandonment case shifts to a mark holder "the burden . . . to establish its intent to resume use," Ambrit, 812 F.2d at 1550 (emphasis added), but "establish" no more clearly corresponds to "produce" or "persuade" than does "demonstrate."

The legislative history of the Lanham Act is similarly equivocal about what burden shifts to a mark holder once a prima facie showing of abandonment has been made.[16] Every federal court that has considered the question, however, has determined that a prima facie case of abandonment shifts only the burden of production, while leaving the ultimate burden of persuasion always with the defendant. See, e.g., On-Line Careline, 229 F.3d at 1087 ("Establishing a prima

---

[16]See Cerveceria Centroamericana, 892 F.2d at 1025 n.4 (citing Trademarks: Hearings on H.R. 82 Before the House Comm. on Patents, 78th Cong. 24 (1944) ("The bill provides that discontinuance of use for 2 consecutive years shall be prima facie abandonment. It would shift the burden to the registrant.") (testimony of Daphne Robert, Esq.)).

20

facie case eliminates the challenger's burden to establish the intent element of abandonment as an initial part of [his] case, creating a rebuttable presumption that the trademark owner has abandoned the mark without intent to resume use. The burden then shifts to the trademark owner to produce evidence that he either used the mark during the statutory period or intended to resume use. The burden of persuasion, however, always remains with the petitioner to prove abandonment by a preponderance of the evidence.") (alteration in original) (citations and quotations omitted and emphasis added); Emergency One, 228 F.3d at 536 ("Proof of three consecutive years of non-use thus creates a presumption -- a mandatory inference of intent not to resume use. Once the presumption is triggered, the legal owner of the mark has the burden of producing evidence of either actual use during the relevant period or intent to resume use. The ultimate burden of proof (by a preponderance of the evidence) remains always on the challenger.") (citations omitted and emphasis added); Rivard, 133 F.3d at 1449; Roulo v. Russ Berrie & Co., 886 F.2d 931, 938 (7th Cir. 1989) ("However, in contradiction to defendant's contention that the plaintiff must also bear the burden of persuasion on this affirmative defense, the owner of the trademark need only produce evidence to rebut the presumption while the ultimate burden of persuasion rests on the defendant.") (emphasis added); Societe de Developments et D'Innovations des

21

Marches Agricoles et Alimentaires-Sodima-Union de Cooperatives Agricoles v. Int'l Yogurt Co., 662 F. Supp. 839, 845 (D. Or. 1987); see also Abdul-Jabbar, 85 F.3d at 411 n.4 ("[I]n . . . the Ninth, Second and Seventh [circuits], prima facie abandonment creates only a rebuttable presumption of abandonment.").

We agree with the Federal Circuit, see Cerveceria Centroamericana, 892 F.2d at 1026, that, given the lack of evidence of Congress's clear intent to the contrary, this approach better comports with Rule 301 of the Federal Rules of Evidence, which provides that

> In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence or to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party upon whom it was originally cast.

Fed R. Evid. 301 (emphases added). Accordingly, we hold that the ultimate burden of persuasion on the issue of abandonment remains with the defendant, and we can discern nothing to the contrary in E. Remy Martin.

In short, the district court was correct to leave the ultimate burden of proof -- and a "strict" one at that -- with Clear Channel. See Conagra, 743 F.2d at 1516; Citibank, 724 F.2d at 1545. On this preliminary record, then, the very most Clear Channel can say is that it met its burden of production on abandonment, and

22

thereby shifted the burden of going forward to CMI.  Even if the burden of

production did shift, however, CMI plainly met it by introducing evidence of its

continued use of "The Breeze" -- the business cards, the billboard, and the

promotional materials.  Weighing all of the evidence submitted by both sides, the

district court made the critical factual finding that CMI had not abandoned "The

Breeze."  We can find no legal error in the district court's analysis, nor can we say

that its factfinding was clearly erroneous.[17]

B.

Clear Channel's second argument on appeal is that the district court abused

its discretion by failing to hold a second hearing after issuing the preliminary

injunction so that it could introduce additional evidence.  An evidentiary hearing is

required for entry of a preliminary injunction only "where facts are bitterly

contested and credibility determinations must be made to decide whether injunctive

---

[17]Clear Channel also argues that CMI's public announcement of its name change
alone establishes a prima facie case of abandonment.  While such an announcement
is the type of circumstance from which intent not to resume use may be inferred,
see McCarthy, supra, §17:11 ("An intent not to resume use might be explicitly stated
in advertising, as where a company advertises that 'We Are Changing Our Name
from ALPHA to ZETA.  Don't Call Us ALPHA any more.'"); Hiland Potato Chip Co.
v. Culbro Snack Foods, Inc., 585 F. Supp. 17, 22 (S.D. Iowa 1982); Emergency One, 228
F.3d at 540, it does not alone serve to make a prima facie showing of
abandonment.  A defendant must also introduce evidence of nonuse.

23

relief should issue." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1312 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Memorial Hosp., Inc., 887 F.2d 1535, 1538 (11th Cir. 1989)) (other citations omitted). In this case, there is "little dispute as to raw facts," id. at 1313 (quoting Jackson v. Fair, 846 F.2d 811, 819 (1st Cir. 1988)); that is, both parties agree that the billboard outside of CMI's offices, CMI's business cards, and some of CMI's promotional materials continue to bear "The Breeze" name and logo after WBZE's name change. There is, however, "much [dispute] as to the inferences" to be drawn from these raw facts. Id. (quoting Jackson, 846 F.2d at 819). In such a situation, we have adopted an "approach to determine whether an evidentiary hearing is necessary that 'leave[s] the balancing between speed and practicality versus accuracy and fairness to the sound discretion of the district court.'" Id. (alteration in original) (quoting Jackson, 846 F.2d at 819).

Here, the district court held an evidentiary hearing and allowed the parties the opportunity to submit supplemental evidence after the hearing before issuing the injunction. Nevertheless, Clear Channel contends that, because it was unable to find and prepare witnesses in time for the first hearing, the district court should be compelled to give it another bite at the apple. But "where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court

24

should not grant the motion absent some showing that the evidence was not available during the pendency of the motion." Mays v. U.S. Postal Serv., 122 F.3d 43, 46 (11th Cir. 1997). Clear Channel has made no such showing. Accordingly, we cannot say that the district court abused its discretion by denying Clear Channel a second hearing.

C.

Clear Channel's third and final argument on appeal is that the district court's injunction is overbroad because it prohibits Clear Channel from making any use of "The Breeze," even what it dubs "curative uses" designed to dispel confusion Clear Channel may create by its on-air identification of WTLY as "The Breeze." While a preliminary injunction must be "narrowly tailored to fit specific legal violations, because the district court should not impose unnecessary burdens on lawful activity," Starter Corp. v. Converse, Inc., 170 F.3d 286, 299 (2d Cir. 1999) (citations and punctuation omitted), the district court was under no obligation to permit Clear Channel to use "The Breeze" as it seeks to do and we cannot say it erred in failing to do so. Curative steps are sometimes required when a new user wants to use a mark that has been abandoned but is still associated by the public

25

with its former holder.[18]  In such a case, the preventive measures are a condition on the use of the mark by the new user.  A court need not permit curative steps to an infringer treading upon the protectable rights of a current user.          Even if the uses of "The Breeze" for which Clear Channel seeks permission -- such as identifying WTLY as "The Breeze 107.1" or "The New Breeze" -- would not infringe CMI's rights in the name, the district court was well within the bounds of its discretion to deny Clear Channel those uses.  "An injunction can be therapeutic as well as protective.  In fashioning relief against a party who has transgressed the governing legal standards, a court of equity is free to proscribe activities that, standing alone, would have been unassailable."  Ambrit, 812 F.2d at 1548 (quoting Kentucky Fried Chicken Corp. v. Diversified Packaging Corp., 549 F.2d 368, 390 (5th Cir. 1977)); see also Indianapolis Colts, 34 F.3d at 416 (finding argument

---

[18]See Restatement (Third) of Unfair Competition § 30 cmt. a (1990) ("A designation that has been abandoned … may for a time retain its significance as an indication of association with the former user.  During the period of residual significance, use of the designation by another is likely to be perceived by prospective purchasers as an indication of association with the former user.  Unless the subsequent user adequately distinguishes its use of the designation from the use by the original owner, the subsequent use is likely to deceive prospective purchasers with respect to the source or sponsorship of the goods or services."); McCarthy, supra, §17:2 ("[B]ecause their subsequent use of the abandoned mark may well evoke a continuing association with the prior user, those who make subsequent use may be required to take reasonable precautions to prevent confusion.").

analogous to Clear Channel's "baffl[ing]"); Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc., 659 F.2d 695, 705 (5th Cir. Unit A Oct. 23, 1981) ("[A] competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line -- even if that requirement involves a handicap as compared with those who have not disqualified themselves.") (emphasis added) (quoting Broderick & Bascom Rope Co. v. Manoff, 41 F.2d 353, 354 (6th Cir. 1930)). The district court was thus well within the bounds of its discretion in shaping the contours of the injunction and we will not second guess its judgment.

**AFFIRMED.**