[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 12, 2005
THOMAS K. KAHN
CLERK

No. 04-13435

D.C. Docket No. 04-01780 CV-WCO-1

CHARLES H. WESLEY EDUCATION FOUNDATION, INC.,
JARU RILEY, et al.,

Plaintiffs-Appellees,

versus

CATHY COX, individually and in her official
capacity as Secretary of State of Georgia, and
LINDA W. BEAZLEY, individually,
KATHY A. ROGERS, in her official capacity
as Director of the Elections Division, Office
of the Secretary of State of Georgia,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 12, 2005)**

Before BARKETT, KRAVITCH and FARRIS[*], Circuit Judges.

_____

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by
designation.

FARRIS, Circuit Judge:

Plaintiffs were granted a preliminary injunction from the district court enjoining Defendant Georgia state officials from rejecting voter registration forms submitted to the state in a single mailed package. Defendants appealed, and we affirm.

I

The Wesley Foundation is a charitable and educational organization affiliated with the predominantly African-American Alpha Phi Alpha fraternity. In June 2004 the Foundation conducted a voter registration drive at a shopping mall in DeKalb County, Georgia, at which they provided and collected voter registration forms for submission by mail. Among the forms they collected was one from Plaintiff Earline Crawford, who was already registered to vote, but gave the Foundation her form so as to notify the state of her changed address. The Foundation collected sixty-four forms and mailed them in a single package to the Secretary of State's office for processing.

Shortly thereafter, the Secretary's office rejected the forms because, in its view, Georgia law prohibited anyone but registrars, deputy registrars or otherwise authorized persons from accepting or collecting voter registration forms. Because no authorized person participated in the voter registration drive, it would not

accept the applications. The package was postmarked before the state- and federally-imposed deadlines (though the individual forms were not postmarked), and it is undisputed that had each of the forms been sent individually, the Secretary would have accepted them.

In their amended complaint, Plaintiffs allege violations of their rights under the National Voter Registration Act of 1993, 42 U.S.C. §§ 1973gg *et seq.* (2004), the Voting Rights Act of 1965, 42 U.S.C. 1973 *et seq.* (2004) and the First, Fourteenth, and Fifteenth Amendments to the United States Constitution.[1] They also filed a motion for preliminary injunction, which the district court granted. Defendants now appeal, arguing that the Plaintiffs lack standing to bring their claims and that the district court erred in granting the injunction.

## II

*A.    Standing*

We review the legal question of standing *de novo. See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1251 (11th Cir. 2003). In doing so, we review factual determinations made at the trial level as part of consideration of motions for preliminary injunctions for clear error. *This That and The Other Gift and*

---

[1]Plaintiffs include Ms. Crawford, four individual volunteers for the Foundation, and the Foundation itself.

*Tobacco, Inc. v. Cobb County*, 285 F.3d 1319, 1321 (11th Cir. 2002).

To have standing, and therefore a justiciable "case or controversy," the plaintiffs must satisfy three constitutional requirements. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). They must establish that: (1) they have suffered a particularized, concrete injury to a legally protected interest (injury in fact); (2) the injury is fairly traceable to the challenged action (causation); and (3) it is likely that the injury may be redressed by judicial action (redressability). *Region 8 Forest Serv. Timber Purchasers Council v. Alcock,* 993 F.2d 800, 805 (11th Cir. 1993). Defendants argue that Plaintiffs fail to satisfy these requirements.

*1.    Ms. Crawford*

Defendants claim first that Ms. Crawford did not allege in the Complaint the now-argued specific injury of being unable to vote in her new home precinct. We disagree. The Complaint alleges that the state rejected her form in violation of Ms. Crawford's rights under the NVRA, which specifically protects her right to use the federal registration form to notify the state of a change of her address. *See* 42 U.S.C. §§ 1973gg-4(a)(3), gg-6(a)(1)(B). Such allegations are sufficient to satisfy the requirements of notice pleading. *See United States v. Baxter Intern., Inc.*, 345 F.3d 866, 881 (11th Cir. 2003) ("Because the Federal Rules embody the

4

concept of liberalized 'notice pleading,' a complaint need contain only a statement calculated to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.") (internal citations omitted).

Defendants also claim that Ms. Crawford lacks standing because as an already registered voter, she suffered no injury that can be traced to the state. We reject the argument. Ms. Crawford's alleged injuries are sufficient to show injury-in-fact for standing purposes. A plaintiff need not have the franchise wholly denied to suffer injury. Any concrete, particularized, non-hypothetical injury to a legally protected interest is sufficient. *See Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1003 (11th Cir. 2004). Moreover, where an alleged injury is to a statutory right, standing exists "even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin*, 422 U.S. 490, 514 (1975).[2]

Ms. Crawford's alleged injuries are also "fairly traceable" to Defendants' actions. Defendants' causation argument, that the root of Crawford's attempted address change's inadequacy was her own lack of compliance with Georgia's requirements, conflates standing with the merits of the case. Causation in the

---

[2]Defendants abandon on appeal the argument advanced before the district court that they cured Ms. Crawford's injuries by sending her an additional form to fill out a few days before the registration deadline.

standing context is a question of fact unrelated to an action's propriety as a matter of law. To establish causation a plaintiff need only demonstrate, as a matter of *fact*, "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Parker*, 386 F.3d at 1003. Ms. Crawford's alleged injuries flow directly from the denial of her registration form.[3]

### 2.    *Wesley Foundation Plaintiffs*

Defendants claim that the Wesley Foundation Plaintiffs also lack standing. To this end, they argue that these Plaintiffs had no "right" to conduct voter registration drives, and therefore they cannot allege injury in their inability to conduct one as they wish. In other words, Defendants claim that whatever injury Plaintiffs suffered, it was not an injury to a "legally protected" interest that can be traced to their actions. We disagree.

Defendants' argument is based on the flawed notion that because the NVRA does not provide for private registration drives as one of the modes of registration it mandates, it prohibits them. The NVRA requires the states to accept voter

---

[3]Though Defendants do not pursue the question, Ms. Crawford's injuries are also redressable: the injunctive relief provided by a favorable decision in this case would redress Ms. Crawford's injuries by permanently withdrawing the additional registration requirements Defendants seek to impose upon her. The fact that the issuance of the preliminary injunction forced the state to accept the sixty-four forms for purposes of elections occurring during this suit's pendency does not affect our analysis. Standing is to be "determined as of the time . . . the plaintiff's complaint is filed," and is not altered by events unfolding during litigation. *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003).

registration forms in three ways beyond those through which the states voluntarily elect to accept them: registration by mail, registration in person at various official locations (so-called "registration places"), and registration in conjunction with driver licensing. *See* 42 U.S.C. § 1973gg. In the first instance, these methods are not intended to be exclusive; rather, the Act seeks to encourage voter registration by setting a floor on registration acceptance methods. *See id.* at § 1973gg-1(b); gg-2(a). More importantly, the use of a private registration drive is not a mode of registration at all. Rather, it is a method by which private parties may facilitate the use of the mode of registration by mail, for which the Act *does* provide.

Nowhere does the NVRA prohibit or regulate voter registration drives; rather, it impliedly encourages them. *See id.* at § 1973gg-4(b) (directing the secretaries of state to make the federal forms provided for in the Act available, "with particular emphasis on making them available for organized voter registration programs").[4] The only provisions regulating mailed forms are unrelated to the legitimacy of voter drives such as the Foundation's; instead, these provisions regulate the *states* by ensuring that voters delivering valid forms in a timely fashion by mail are registered. *Id.* at §§ 1973gg-2(a)(2), gg-6(a)(1)(D). In

---

[4]The Act mandates that the states accept a particularly defined federal registration form (hereinafter "federal form") for purposes of registration for federal elections. *See id.* at § 1973gg-7(a)(2). This was the form used by the Plaintiffs.

other words, they regulate the forms' final content and method of delivery, but do not regulate their dissemination or collection. Thus the Act does not prohibit registration drives, but, because it limits the states' ability to reject forms meeting its standards (which privately collected, mailed forms would do), it does protect them. *See* § 1973gg-6(a)(1)(D) (stating that the states "shall . . . ensure" that voters delivering timely, valid forms are registered); § 1973gg-2(a)(2) (states "shall accept" the federal mail-in form). For these reasons, it is clear that the Foundation's right to conduct voter registration drives is a legally protected interest.

As with Defendants' causation arguments regarding Ms. Crawford, we reject the claim that because the Foundation engaged in actions Defendants consider prohibited, the Plaintiffs are the "cause" of any injuries suffered. Whether such a denial was appropriate, and whether Plaintiffs acted within their rights in conducting their drive as they did, are questions relevant not to standing, but to the dispute on the merits (so long as Plaintiffs' asserted *interests* are legally protected). For standing purposes, it is clear that Plaintiffs' alleged injuries are traceable to the Defendants' rejection of their mailed bundle of registration forms.

The NVRA protects Plaintiffs' rights to conduct registration drives and submit voter registration forms by mail, and Defendants' denial of the sixty-four

forms here was a clear invasion of that interest, traceable to Defendants' actions, and redressable by injunctive relief.[5] As such, Plaintiffs have standing to sue.

B.    *Preliminary Injunction*

Having determined that the Plaintiffs have standing, we turn to the district court's decision to grant Plaintiffs' motion for preliminary injunction. Preliminary injunction decisions, "about the viability of a plaintiff's claims and the balancing of equities and the public interest, are the district court's to make and [this Court] will not set them aside unless the district court has abused its discretion in making them." *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167, 1171 (11th Cir. 2002). Only if the Court finds that error in the "apprehension or application of the law will [it] subject the entirety of a preliminary injunction order to plenary review." *Id*.

To grant a motion for a preliminary injunction, the trial judge must determine that the moving party has shown that "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause to the moving party; and (4) if issued,

---

[5]As with Ms. Crawford, redressability is both conceded and satisfied as to the Foundation Plaintiffs.

the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234

F.3d 1163, 1176 (11th Cir. 2000) (en banc).

    1.    *Substantial Likelihood of Success*

Defendants contend primarily that the suit does not carry the requisite

"substantial likelihood of success on the merits." They argue first that the

Plaintiffs' NVRA claims are basically preemption claims, and that there is no

conflict between Georgia and federal law regarding the acceptance of voter

registration forms. In essence, their claim is that the NVRA only requires that

mailed registration forms be accepted when delivered both in a timely fashion *and*

pursuant to additional state requirements. *See* 42 U.S.C. § 1973gg-6(a)(1)(B),(D).

Because the Act only regulates the content of the form itself and the timing of its

delivery, they argue, the Act allows the state to regulate the method of delivery.

This argument is unpersuasive. By requiring the states to accept mail-in

forms, the Act does regulate the method of delivery, and by so doing overrides

state law inconsistent with its mandates. The Act simply requires that valid

registration forms delivered by mail and postmarked in time be processed. *Id.* at

§§ 1973gg-2(a)(2), gg-6(a)(1)(D). The forms here appear to have satisfied these

requirements. The postmark on the package applied to all its contents, thereby

rendering each form postmarked, and no party disputes the forms' timeliness.

This case is unlike *Association of Community Organizations for Reform Now v. Miller*, 912 F.Supp. 976, 986-88 (W.D. Mich. 1995), *aff'd*, 129 F.3d 833 (6th Cir. 1997), on which Defendants rely to argue that their anti-"bundling" policy is a legitimate protection against voter fraud. That case upheld a Michigan statute providing that when voter cards sent to registrants were returned as undeliverable, those persons were deemed unregistered. This is not the kind of rule at issue here. First, the Michigan rule did not implicate the clear directives of the mail-in registration processes protected by the NVRA. It dealt with the evaluation of registrations *after* submission and initial registration. Second, unlike the Michigan statute, the Georgia policy does little, if anything, to prevent fraud or assist in the assessment of voter eligibility. Defendants assert that their practices protect confidential voter information and prevent fraudulent submission, but the risk of exposure and fraud is equal whether forms are sent in bulk or individually, so long as third-party handling of any kind is allowed (and Defendants admit the NVRA does not prohibit third-party submission of individual forms).

Defendants also claim that because the NVRA provides for registrars to serve various functions for the state—most significantly assisting with and receiving registration forms—citizens may not serve similar roles in private voter registration drives. *See* 42 U.S.C. § 1973gg-5(a)(4),(5). As noted, though, the Act

11

does not regulate private voter organization; it only imposes duties on the states.

The Act does not dictate that only state actors may perform the simple function of

*assisting* citizens with voter registration forms, and Plaintiffs do not claim

authority to *receive* such forms on behalf of the state. Similarly, Defendants are

not helped by their citation to a Georgia statute providing for the creation of

official "registration places" where applications for registration are "received."

*See* Ga. Comp. R. & Regs. § 183-1-6-.03(3)(c),(k)(1). That statute is simply not

implicated either by pre-submission third-party handling of forms or by

registration by mail. In any case, even were that statute implicated by Plaintiffs'

actions here, it would have to give way to the clear mandates of the NVRA, which

Plaintiffs appear to have satisfied.[6]

2.       *Irreparable Injury, Balancing Harms, and the Public Interest*

None of the remaining factors for consideration of a motion for preliminary

injunction is favorable to the Defendants. The associational and franchise-related

---

[6]That Plaintiffs' actions here do not implicate § 183-1-6-.03(3) eviscerates Defendants' argument that the preclearance provisions of the Voting Rights Act, 42 U.S.C. § 1971 *et seq.*, which were allegedly followed in adopting that provision (but not the anti-bundling rule), support the legitimacy of the state's actions. In any case, as the Plaintiffs and *amici* have noted, preclearance has no bearing on the legitimacy of a given rule, procedure or action with regard to other federal electoral laws. *See Reno v. Bossier Parish*, 528 U.S. 320, 335 (2000) ("[P]reclearance under § 5 affirms nothing but the absence of backsliding"). Defendants' related claim that the private voter registration drive (which was not "precleared") was invalid falls short because the preclearance provisions of the Act simply do not apply to private actors. 42 U.S.C. § 1973c.

12

rights asserted by the Plaintiffs were threatened with significant, irreparable harm, and the injunction's cautious protection of the Plaintiffs' franchise-related rights is without question in the public interest. In contrast, the harm and costs threatened to the state by these registration forms were minimal, if they existed at all. The administrative burden of opening bundled forms instead of individual forms is negligible, and the public interest in protecting against electoral fraud does not appear to be compromised by the temporary loss of Georgia's anti-bundling rule.

**AFFIRMED.**