839 A.2d 727

**BANK OF AMERICA f/k/a/ Nationsbank**

v.

**Kenneth W. STINE.**

**No. 3, Sept. Term, 2001.**

Court of Appeals of Maryland.

Dec. 30, 2003.

Ronald S. Canter (Harry K. Wolpoff, Wolpoff & Abramson, L.L.P., on brief), Rockville, for appellant.

Mark F. Scurti (Scurti and Gulling, P.A., Robert Neil Grossbart, David A. Rosenberg, Robert A. Grossbart, P.A., on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, C.J.

## I.

The limited issue that has been certified to this court by the United States Circuit Court of Appeals for the Fourth Circuit, and which we must answer, is whether, when a garnishment is avoided as a preferential transfer, a debtor in bankruptcy, pursuant to Maryland Code (1973, 1998 Replacement Volume), § 11–504 of the Courts and Judicial Proceedings Article ("Courts"), may claim as exempt from the bankruptcy estate,

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

wages previously garnished by a judgment creditor, pursuant to Maryland Code (1975, 2000 Replacement Volume), §§ 15–601–607 of the Commercial Law Article ("CL").

## II. The facts are not in dispute.

In February, 1998, the appellant, NationsBank, obtained a judgment against the appellee, Kenneth Stine, in the District Court of Maryland. It thereafter filed a Writ of Garnishment to enforce its judgment and, pursuant that writ, attached 25% of the appellee's wages, the amount allowable by law. CL § 15–601.1(b) exempts from attachment 75% of the debtor's disposable wages.[1]

On December 23, 1998, the appellee filed for relief under Chapter 7 of the United States Bankruptcy Code. Pursuant to 11 U.S.C. § 522(h), which empowers a debtor to avoid a transfer of property when the bankruptcy trustee could have, but chose not to avoid such a transfer, the appellee sought to recover the $1,064.05 of his wages that the appellant had garnished within the 90 days preceding the appellee's bankruptcy filing. The United States Bankruptcy Court entered judgment in favor of the appellee.

---

1. Maryland Code (1975, 2000 Replacement Volume) § 15–601.1, provides:

"(a) *Disposable wages.*—In this section 'disposable wages' means the part of wages that remain after deduction of any amount required to be withheld by law.

"(b) *Amounts of wages exempt; medical insurance payment.*—The following are exempt from attachment:

"(1) Except as provided in item (2) of this subsection, the greater of:

"(i) The product of $145 multiplied by the number of weeks in which the wages due were earned; or

"(ii) 75 percent of the disposable wages due;

"(2) In Caroline, Kent, Queen Anne's, and Worcester counties, for each work week, the greater of:

"(i) 75 percent of the disposable wages due; or

"(ii) 30 times the federal minimum hourly wages under the Fair Labor Standards Act in effect at the time the wages are due; and

"(3) Any medical insurance payment deducted from an employee's wages by the employer.

"(c) *Calculation per pay period.*—The amount subject to attachment shall be calculated per pay period."

The appellant noted an appeal to the United States District Court for the District of Maryland, arguing that the appellee could not recover his wages under 11 U.S.C. § 522(h) because, although the trustee could have avoided the transfer, the appellee could not, because the wages were not exempt under the Maryland exemption scheme. More particularly, the appellant argued that the clear and unambiguous language of Maryland's exemption scheme, codified at Courts § 11–504, expressly prohibits a debtor from claiming an exemption in wage garnishments. Further, the appellant argued that the appellee had already availed himself of the only exemption to which he was entitled, when 75% of his net wages were exempted pursuant to CL § 15–601.1 in connection with the appellant's garnishment.

Conceding that, as written, the language of § 11–504(e) disallows the exemption of wage garnishments, the appellee argued, nevertheless, that the exception did not mean that wage garnishments could never be exempted. To the contrary, he submits, relying on the decision of the District Court in this case, see Bank of Am., N.A. v. Stine, 252 B.R. 902, 904 (D.Md.2000), that the language of § 11–504(e) simply prevents a judgment creditor from claiming § 11–504 exemptions "at the time of the attachment". Id. at 904. The appellee also asserted that, once a debtor files for bankruptcy, that subsection does not protect a creditor's interest in a preferential transfer, to which the creditor is not entitled under federal bankruptcy law. To accept the appellant's interpretation, argued the appellee, would mean that the § 11–504 exemption scheme would protect the wage garnishment as a preferential transfer, "... to the detriment of the bankruptcy estate and the debtor's right to emerge from bankruptcy with adequate possessions to begin his fresh start, as was Congress' intent." [the appellee's brief at 7].

The United States District Court agreed with the appellee and affirmed the Bankruptcy Court decision. See Stine, supra., 252 B.R. 902. In so doing, the court explained that § 11–504(e) was intended to prevent a non-bankruptcy judgment debtor from claiming exemption from wage attachment,

75% of his wages as allowed under CL § 15–601.1 and then also claiming an exemption from attachment under § 11–504(e) so as to prevent the creditor from attaching the 25% of the wages CL § 15–601.1 makes available to a judgment creditor. *Id.* at 904. Further, the court stated that Courts § 11–504(e) did not prevent a bankruptcy debtor from claiming an exemption in attached wages which, in bankruptcy, amounted to a preferential transfer. *Id.* at 904–05. The court opined:

> "Section 11–504 (e) . . . provides a shield for a creditor who has properly garnished wages under section 15–601.1 against a debtor's misuse of section 11–504 exemptions. The shield is a critical part of the statutory scheme and must be honored. NationsBank, however, is seeking to use the shield as a sword to frustrate the policy of federal bankruptcy law of avoiding preferential transfers. This is not a case in which Stine asserted section 11–504(e) exemptions to defeat a lawful garnishment at the time his wages were attached. Rather, his aim is to undo preferential transfers to which NationsBank is not entitled under federal law."

*Id.*, 252 B.R. at 904. The court further elucidated that "when enacting sections 11–504 and 15–601.1 the Maryland General Assembly did not intend unnecessarily to undermine a fundamental policy of federal bankruptcy law. Therefore, if section 11–504 can be read in a manner that reconciles both federal and state interests, it is that reading that must govern." *Id.*

The appellant timely noted an appeal to the United States Court of Appeals for the Fourth Circuit. In turn, pursuant to Maryland Code, (1973, 1998 Replacement Volume) §§ 12–603, 12–605 and 12–606 of the Courts and Judicial Proceedings Article, that court certified the following question of law for our determination:

> "Whether a debtor in bankruptcy may claim as exempt from the bankruptcy estate, pursuant to Maryland Code Annotated, Courts and Judicial Proceedings § 11–504 (1998) wages previously garnished by a judgment creditor pursuant to Maryland Code Annotated, Commercial Law II

§§ 15–601–607 (2000), when the garnishment is avoided as a preferential transfer."

■ We agree with the appellee, the Bankruptcy Court, and the District Court and hold that Maryland's exemption scheme disallows the exemption of wage attachments only to the extent that it applies to a non-bankruptcy judgment debtor under § 15–601.1, but that when a debtor files for bankruptcy, any wage attachment, as a pre-petition judgment, becomes a preferential transfer in the form of earned wages, which is avoidable by the trustee and derivatively avoidable by the debtor within the contemplation of the Federal Bankruptcy Code and thus, is exempt.

## II.

The field of bankruptcy is generally governed by Title 11 of the United States Code, the Federal Bankruptcy Code. Under that code, when a debtor files for bankruptcy under Chapter 7, 11 U.S.C. § 701 et seq., all of that debtor's assets are liquidated and transferred to the bankruptcy estate. A trustee is assigned to oversee the administration of the bankruptcy estate and to ensure that the bankrupt individual's debts are satisfied to the extent possible from the assets of the bankruptcy estate. The trustee is empowered to avoid preferential transfers that occurred within the 90 days preceding the bankruptcy filing under 11 U.S.C. § 547.[2] Further, pursuant to 11 U.S.C. § 522(h), the code empowers the bankruptcy debtor to avoid certain preferential transfers when the trustee has chosen not to do so. That section provides:

---

2. 11 U.S.C. § 547(b) provides, in pertinent part:
 "(b) Except as provided in subsection (c) of section, the trustee may avoid any transfer of an interest of the debtor in property—
 "(1) to or for the benefit of a creditor;
 "(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 "(3) made while the debtor was insolvent;
 "(4) made—
 "(A) on or within 90 days before the date of the filing of the petition. . . ."

"(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

"(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

"(2) the trustee does not attempt to avoid such transfer."

This case had its genesis when, after he filed for bankruptcy, the appellee sought to avoid, under 11 U.S.C. § 522(h), the amount of his wages the appellant had garnished within the 90 days prior to his filing bankruptcy.

To avoid a transfer pursuant to § 522(h), a bankruptcy debtor must meet five requirements. *Stine*, 252 B.R. at 903, citing *Humphrey v. Herridge (In re Humphrey)*, 165 B.R. 578, 580 (Bankr.D.Md.1993). Those requirements are: the debtor must show that "(1) the debtor could have exempted the property at issue; (2) the transfer would have been avoidable by the trustee; (3) the trustee has not attempted to avoid the transfer; (4) the transfer was not voluntary; and (5) the debtor did not conceal the property." Both parties agree that prongs 2 through 5 have been satisfied. The only question that remains, therefore, and the one that has been certified to this Court for resolution, is whether the appellant could have exempted the property at issue.

The exemptions available to a debtor in bankruptcy under the federal bankruptcy exemption scheme are enumerated at 11 U.S.C. § 522(d). In the Bankruptcy Reform Act of 1978, however, Congress permitted states to "opt out" of the Federal exemption scheme and enact their own exemption provisions.[3] Maryland is one of the states that has chosen to opt

---

3. 11 U.S.C. § 522(b)(1) reads:

"(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either . . .

out of the Federal scheme,[4] and thus, the exemptions a bankruptcy debtor may take are limited to those enumerated in Md.Code (1973, 1998 Repl.Vol.) § 11–504 of the Courts and Judicial Proceedings Article. Whether, therefore, the appellee may exempt the appellant's wage attachments under the current Maryland scheme will turn on the interpretation given the Maryland exemption statute, in particular, subsection 11–504(e) addressing whether a bankruptcy debtor may exempt pre-petition transfers in the form of wage garnishments.

Determining the meaning of § 11–504(e) is a matter of statutory construction, the primary goal of which is to "ascertain and effectuate the intention of the legislature." *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423, 429 (1995). In order to discern legislative intent, we first examine the words of the statute and if, giving them their plain and ordinary meaning, the statute is clear and unambiguous, we will end our inquiry. *Comptroller of the Treasury v. Kolzig*, 375 Md. 562, 567, 826 A.2d 467, 469 (2003). As we have recognized, however, "[a]n ambiguity may . . . exist even when the words of the statute are crystal clear. That occurs when its application in a given situation is not clear." *Blind Indus. & Servs. of Md. v. Md. Dep't of Gen. Servs.*, 371 Md. 221, 231, 808 A.2d 782, 788 (2002). Therefore, a statutory provision may be ambiguous: "1) when it is intrinsically unclear; or 2) when its intrinsic meaning may be fairly clear, but its application to a particular object or circumstance may be uncertain." *Gardner v. State*, 344 Md. 642, 648–49, 689 A.2d 610, 613 (1997). Further, "when the statute to be interpreted is part of a

---

"(1) property that is specified under subsection (d) of this section unless the State law that is applicable to the debtor under paragraph (2)(A) does not so authorize."

For an exhaustive discussion of the Bankruptcy Reform Act and Congress's decision to allow states to opt out of the Federal bankruptcy exemption scheme, *see generally, In re Neiheisel*, 32 B.R. 146 (Bankr. D.Utah 1983).

4. Maryland Code (1973, 2002 Replacement Volume) § 11–504(g), Maryland's opt out provision, provides: "In any bankruptcy proceeding, a debtor is not entitled to the federal exemptions provided by § 522(d) of the Federal Bankruptcy Code."

statutory scheme, . . . [we read it in context, together with the other statutes] on the same subject, harmonizing them to the extent possible. . . ." *Mid–Atlantic Power Supply Ass'n v. Pub. Serv. Comm'n,* 361 Md. 196, 204, 760 A.2d 1087, 1091 (2000). We also "seek to avoid constructions that are unreasonable, or inconsistent with common sense," *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994), and we will presume that "the Legislature 'intends its enactments to operate together as a consistent and harmonious body of law,' " *Toler v. Motor Vehicle Admin.,* 373 Md. 214, 220, 817 A.2d 229, 234 (2003), quoting *State v. Ghajari,* 346 Md. 101, 115, 695 A.2d 143, 149 (1997) (quoting *State v. Harris,* 327 Md. 32, 39, 607 A.2d 552, 555 (1992)), so that "no part of the statute is rendered meaningless or nugatory." *Id.,* (citing *Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426, 428 (2002)); *see also Montgomery County v. Buckman,* 333 Md. 516, 523–24, 636 A.2d 448, 452 (1994). In our endeavor to harmonize the provisions of all of the relevant statutes, this Court will prefer an interpretation that allows us to avoid reaching a constitutional question. *East Prince Frederick Corp. v. County Board of Comm'rs,* 320 Md. 178, 182, 577 A.2d 27, 29 (1990). *Automobile Trade Ass'n v. Ins. Comm'r,* 292 Md. 15, 21, 437 A.2d 199, 202 (1981).

As relevant, CJP § 11–504 provides:

"(b) *In general*—The following items are exempt from execution on a judgment:

\* \* \* \* \* \*

"(5) Cash or property of any kind equivalent in value to $3,000 is exempt, if within 30 days from the date of the attachment or the levy by the sheriff, the debtor elects to exempt cash or selected items of property in an amount not to exceed a cumulative value of $3,000.

\* \* \* \* \* \*

"(e) *Wage attachments*—The exemptions in this section do not apply to wage attachments.

"(f) *Interest in real or personal property.*—In addition to the exemptions provided in subsection (b) of this section and

in other statutes of this State, in any proceeding under Title 11 of the United States Code, entitled 'Bankruptcy', any individual debtor domiciled in this State may exempt the debtor's aggregate interest, not to exceed $2,500 in value in real property or personal property."

Although both the appellant and the appellee agree that the plain language of the statute purports to prohibit the exemption of wage attachments, each offers a different, yet reasonable, interpretation of how § 11–504(e) should be applied in light of all of the relevant statutory provisions and circumstances. Our task is to ascertain the proper application of § 11–504(e).

The appellee argues that he may exempt, pursuant to the so-called "cafeteria"[5] exemption provisions enumerated in § 11–504(b)(5) or § 11–504(f), the amount of the wages that the appellant garnished because, as the bankruptcy debtor, he has the derivative right to avoid the pre-petition preferential payment made to the appellant. More particularly, the appellee asserts that the language of § 11–504(e) purporting to prohibit the exemption of wage attachments was meant to "provide protection for a creditor who has properly garnished wages under § 15–601 against a debtor's misuse of CJP § 11–504 exemptions." [the appellee's brief at 12]. The provision, argues the appellee, was not meant to apply so as to prohibit the exemption of property which is avoidable as a pre-petition preferential transfer under 11 U.S.C. § 522(h).

The appellant asserts that, in light of the authority given to the states to enact their own more or less stringent exemption schemes, we should read § 11–504(e), the language of which it characterizes as "plain," as a comprehensive measure to disallow both bankruptcy and non-bankruptcy debtors from exempting wage attachments. In the alternative, the appellant argues that, although there is little legislative history on the

---

5. This court refers to 11–504(b)(5) and 11–504(f) as "cafeteria exemptions", which essentially allow a bankruptcy debtor to exempt any form of cash or property so long as it falls within the monetary caps enumerated in those sections.

enactment of § 11–504(e), the Legislature has impliedly indicated that it intended to disallow the exemption of wage attachments in bankruptcy situations. This is so, it contends, because, despite its many opportunities to do so, the General Assembly has chosen not to amend the language prohibiting the exemption of wage attachments.

 Our analysis is not limited to the language and intent, of the exemption provisions enumerated in § 11–504(e). The Supremacy Clause of the United States Constitution, instructs:

> "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

U.S. Constitution, Art. VI, Clause 2. Further, pursuant to Article 1, Section 8 of the United States Constitution, Congress has plenary power to enact uniform bankruptcy laws.[6] *Witbeck v. Electro Nuclear Systems Corp.*, 243 Md. 563, 569, 221 A.2d 888, 891 (1966). Therefore, the states are bound whenever Congress legislates in the area of bankruptcy. *Old Town Bank v. McCormick*, 96 Md. 341, 341–42, 53 A. 934, 935–36 (1903). *See Perez v. Campbell*, 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233, 242 (1971). Consequently, a state law that is inconsistent with, or contrary to, the express language, or a primary purpose, of a federal law on the subject is preempted and, thus, deemed invalid. *Witbeck, supra,* 243 Md. at 569, 221 A.2d at 891 (holding that Maryland insolvency laws are preempted where Congress has legislated in the field

---

**6.** Article 1, Section 8 of the United States Constitution provides, in pertinent part:

"The Congress shall have Power . . .

\* \* \*

"To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States."

of bankruptcy and thus, the court lacked the jurisdiction to provide a remedy under the Maryland insolvency laws). *Conaway v. Social Services Administration*, 298 Md. 639, 649–50, 471 A.2d 1058, 1063–64 (1984) (holding that a state regulation "which allow[ed] the State to use conserved federal benefits for reimbursement of past foster care costs, [was] preempted by [Federal statutes] which prohibit the State from seizing such benefits for reimbursements", and thus violated the Supremacy Clause of the United States Constitution). See *Old Town Bank, supra*, 96 Md. at 341–42, 53 A. at 935–36.

In *Perez*, judgment was entered against Perez in an action resulting from an automobile accident with the appellee, Campbell. Thereafter, Perez filed for bankruptcy and the amount of the Campbell judgment, along with his other debts, were discharged. Despite the discharge of the judgment, however, the state of Arizona suspended Perez's license pursuant to the Arizona bankruptcy statute, which provided that a discharge in bankruptcy did not prevent an individual's driver's license from being suspended if that individual failed to satisfy a judgment entered against him as a result of a motor vehicle accident. The issue for the court was whether that Arizona state bankruptcy law was invalid under the Supremacy Clause. The argument proceeded on the premise that such law conflicted with the Federal Bankruptcy Code. The Supreme Court held that the state law was unconstitutional because it conflicted with a primary purpose of the Federal Bankruptcy Code, to "give debtors a new opportunity in life and a clear field for future effort unhampered by the pressure and discouragement of pre-existing debt," *id.* at 648, 91 S.Ct. at 1710–11, 29 L.Ed.2d at 241–42, quoting *Local Loan v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235 (1934), the Court explained. It further held that Congress "intended this new opportunity to include freedom from most kinds of preexisting tort judgments." *Id.*

To arrive at its conclusion, the Supreme Court relied upon the sage advice of Justice Black, speaking for the Court in *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587 (1941):

"while '[t]his Court, in considering the validity of state laws in the light of treaties or federal laws touching the same subject, ha[d] made use of the following expressions: conflicting; contrary to; occupying the field; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; and inference, ... in the final analysis', our function is to determine whether a challenged state statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"

*Id.* at 649, 91 S.Ct. at 1711, 29 L.Ed.2d at 242. The Court added that, when the effect of the state law was to contravene the "full effectiveness of the federal law," *id.* at 652, 91 S.Ct. at 1712, 29 L.Ed.2d at 244, in violation of the Supremacy Clause, the fact that the state law was not enacted for the purpose of frustrating federal bankruptcy law did not matter.

 Our cases and *Perez* are instructive on the proper interpretation of § 11–504(e). They teach that state laws that prevent the full effectiveness of the federal bankruptcy law are invalid under the Supremacy Clause. If, therefore, there is an interpretation of a state bankruptcy law that both satisfies a state interest and exists harmoniously with the federal bankruptcy legislation or policy, that interpretation is most desirable. That preference also comports with the rules of statutory construction that seek to avoid constitutional questions and to avoid a statutory interpretation that renders another, or any, statutory provision nugatory.

 It is clear that one of the primary tenets of the federal bankruptcy scheme is that no general creditor should have greater right or access to repayment of debt than any other. *In re Barefoot,* 952 F.2d 795, 797–98 (4th Cir.1991). To that end, Congress has enunciated, and emphasized, a fundamental distaste for preferential transfers and has specifically granted bankruptcy trustees the power to avoid such preferential transfers for the benefit of the debtor estate. *See* 11 U.S.C. § 547(b). The policy underlying allowing bankruptcy trustees to recover preferential transfers from transferees when the transfer has been made within 90 days of the

bankruptcy filing was stated in H.R.Rep. No. 95–595 at 175–76 (1977) *reprinted in* 1978 U.S.C.C.A.N. at 6138.

"First, by permitting the trustee to avoid pre-bankruptcy transfers that occur within a short period before bankruptcy, [thus discouraging creditors] from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his debtors. Second, and more important, the preference provisions facilitate the *prime bankruptcy policy* of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution."

*Id.* (emphasis added). *See also, Begier v. IRS,* 496 U.S. 53, 58, 110 S.Ct. 2258, 2262, 110 L.Ed.2d 46, 56 (1990) (holding that "[e]quality of distribution among creditors is a central policy of the Bankruptcy Code," and that "[s]ection 547(b) furthers this policy by permitting a trustee in bankruptcy to avoid certain preferential payments made before the debtor files for bankruptcy").

Under *Perez,* if this Court were to accept the appellant's interpretation of § 11–504(e) and hold, pursuant to the express language of the provision, that a debtor may never exempt wage attachments that are garnished within 90 days of the bankruptcy filing, a "loophole" effectively would be created, through which judgment creditors could hold onto prepetition transfers in frustration of the clear policy against preferential transfers and creditor favoritism. That interpretation would also render the statute in violation of the Supremacy Clause and unconstitutional.

While we acknowledge *Perez*'s instruction, this Court also recognizes that it is equally true that, where Congress has

expressly authorized states to enact bankruptcy legislation concurrently, that legislation is not rendered unconstitutional merely because it differs from the federal law or the statutory scheme covering the area of concurrent coverage. *Old Town Bank of Baltimore v. McCormick*, 96 Md. at 351–52, 53 A. at 935–36. Thus, in light of the ability of the states to "opt out" of the federal bankruptcy exemption scheme, a number of state courts have upheld state bankruptcy exemption statutes that differ greatly from the federal exemption scheme. These states interpret the "opt out" authority as recognizing that states may enact exemption schemes that are more, or less, inclusive than the federal. *In re Butcher*, 189 B.R. 357, 370–71 (Bankr.D.Md.1995), *affd.* 125 F.3d 238 (4th Cir.1997). *See also. McManus v. Avco Financial Svcs.*, 681 F.2d 353, 355–57 (5th Cir.1982) (Since Louisiana "opted out" of the federal exemptions contained in the Bankruptcy Code and by statute mandated that household goods subject to chattel mortgage were not exempt, chattel mortgages on debtor's household goods and furnishings did not impair exemption to which debtors would have been entitled under Bankruptcy Code.); *Rhodes v. Stewart*, 705 F.2d 159, 163–64 (6th Cir.1983) *cert. denied*, 464 U.S. 983, 104 S.Ct. 427, 78 L.Ed.2d 361(1983). (holding that, because Congress allowed states to "opt out" of the federal bankruptcy exemption scheme, the amount a bankruptcy debtor could claim as a homestead exemption under the Tennessee exemption scheme was valid even though the allowable exemption amount was significantly less than that allowed for homestead exemptions under the federal exemption scheme).

In *Butcher, supra,* the issue relevant to this case was whether the Maryland exemption under § 11–504(b), which purported to exempt "money payable in the event of sickness, accident, injury or death of any person, including compensation for loss of future earnings," violated the Supremacy Clause because the Maryland exemption scheme allowed for substantially more generous exemptions than was permitted under 11 U.S.C. § 522(d).

The court held that it did not. *Id.*, 189 B.R. at 370–72. It explained that, because Congress had expressly authorized states to legislate the amount of the exemptions debtors may claim in bankruptcy, the fact that the Maryland exemption was more generous than the federal exemption did not create a conflict between the Federal Bankruptcy Code and the Maryland exemption scheme. *Id.*

■ Unlike in *Butcher, Rhodes* and *McManus,* in this case, it is not asserted that a conflict exists between a Maryland exemption and the federal exemption scheme. Rather, at issue is whether the interpretation of § 11–504(e) that the appellant offers, that that section prescribes an absolute prohibition to the exemption of wage attachments in bankruptcy, reflects the General Assembly's intention or conflicts with the right of the bankruptcy trustee, and the derivative right of the debtor, to avoid pre-petition preferential transfers prohibited by 11 U.S.C. § 522(h).

Bankruptcy courts in the Fourth Circuit have consistently held that the correct interpretation of § 11–504(e) is that a debtor may not exempt wage attachments in frustration of a creditor's judgment under § 15–601.1, and that the language of § 11–504(e) may not be interpreted to exempt wage attachments that amount to a pre-petition preferential transfer. *See In re Norcia,* 255 B.R. 394, 397 (D.Md.2000) (relying on the reasoning in *Stine,* 252 B.R. at 904 to hold that " . . . to protect the interests of both the federal and state law, § 11–504(e) should be read to preclude a debtor from asserting an exemption of wages garnished at the time of attachment but should not be read so that a debtor in bankruptcy may never be able to exempt garnished wages as cash or personal property"). *See also, In re Smoot,* 237 B.R. 875, 877 (Bkrtcy.D.Md.1999).

In *Smoot,* a case almost factually identical to the instant case, the appellee, a bankruptcy debtor, as part of his Chapter 13 bankruptcy proceedings and pursuant to 11 U.S.C. § 522(h), initiated an adversary proceeding to avoid the wages garnished by his creditor within 90 days of the bankruptcy filing. The creditor argued that the appellee could not avoid

the property transfer because Maryland's exemption provisions expressly prohibited a bankrupt debtor from exempting wage attachments. The court held that the appellant was entitled to avoid the property, reasoning that, "[w]hile Maryland law specifically excludes wage attachments from the general exemptions, debtor's standing under § 522(h) to avoid wage attachments as preferential transfers is derivative from the trustee's power to avoid and recover transfers. What is exempt is not the preferential payment per se but the funds recoverable by the trustee." *Id.* at 881.

The appellee construes § 11–504(e) to prohibit non-bankruptcy debtors from stacking exemptions under § 11–504's "cafeteria exemptions" when that debtor has already claimed, pursuant to CL § 15–601.1, an exemption from wage attachment of 25% of his wages. We agree that the appellee's interpretation is more palatable, but also that it is the correct interpretation. First, it serves a convincingly plausible purpose under Maryland law. The exemption scheme set out in § 11–504 is a comprehensive one. The exemption provisions in that section do not apply only to bankruptcy debtors; rather, they apply to all judgment debtors. The General Assembly, however, laid out a specific exemption for wage attachments under CL § 15–601.1. That exemption precluded a judgment creditor from attaching any more than 25% of a judgment debtor's wages. In light of the greater exemptions available to a judgment debtor under § 11–504, it is highly conceivable that, absent the prohibition of § 11–504(e), which expressly states that the exemptions listed in that section do not apply to wage attachments, a judgment debtor could claim an exemption in the 25% of his wages available to the judgment creditor pursuant to CL § 15–601.1, and, thus, be enabled to avoid satisfying any part of the judgment against him and frustrating the creditor's claim.

Second, in light of the trustee's authority, to which the debtor is derivatively entitled, to avoid pre-petition preferential transfers under the Federal Bankruptcy Code, the appellee's interpretation of § 11–504(e) as applying only in the non-bankruptcy setting harmonizes with the federal policy against

preferential transfers and creditor favoritism. This interpretation of the statute is bolstered by 11 U.S.C. §§ 522(g) and (h) of the Federal Bankruptcy Code. They provide, as follows:

"(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551 or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section *if such property had not been transferred.*

\* \* \* \* \* \*

"(h) The debtor may avoid a transfer of property of the debtor of recover a setoff to the extent that the debtor *could have exempted such property under subsection (g)(1)* of this section if the trustee had avoided such transfer, if—

"(1) such transfer is avoidable by the trustee under section 544, 544, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

"(2) the trustee does not attempt to avoid such transfer."

(Emphasis added). Subsections (g) and (h) enumerate the derivative powers a debtor has to avoid certain pre-petition transfers of property. Subsection (g) allows the debtor to exempt transfers of property that the trustee recovers under the relevant federal bankruptcy title provisions as long as the debtor could exempt the property under the federal exemption scheme. It dictates, however, that, before determining whether the preferential transfer could have been exempted under the federal exemption scheme, the property transfer sought to be exempted takes on whatever form it would have had, *"if such property had not been transferred."* Essentially, subsection (g) creates a legal fiction pursuant to which the nature of the transferred property is restored to whatever form it took prior to the transfer. In turn, subsection (h) allows a debtor to avoid from his bankruptcy estate, transferred property to the extent that *"the debtor could have exempted such property under subsection (g)(1) of this section ...."*

Of course, by their express terms, subsections (g) and (h) contemplate exemptions that are allowable under the federal exemption scheme. As we stated before, however, Maryland has opted out of the federal exemption scheme. Therefore, the subsections must be restructured to reflect the exemptions available to a Maryland debtor. So viewed, subsection (g) would read: "The debtor may exempt [under the Maryland exemption scheme], property that the trustee recovers . . . [7] to the extent that the debtor could have exempted such property [under the Maryland exemption scheme] *if such property had not been transferred.*" Similarly, taking into account the Maryland exemption scheme, subsection (h) would read: "The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property [under the Maryland exemption scheme if such property had not been transferred] if the trustee had avoided such transfer. . . ."

It is clear that Congress contemplated that a bankruptcy debtor would enjoy the ability to avoid preferential transfers as a derivative of the trustee's ability to avoid such transfers. This is in keeping with the Congressional intent that the debtor emerge from bankruptcy with adequate resources to have a "fresh start." The appellant urges this Court to interpret § 11–504(e) as prohibiting the exemption of wage attachments by the appellee. Pursuant to 11 U.S.C. § 522(h), however, viewing the transferred property in its form had the appellee's wages not been transferred to NationsBank, they would simply constitute earned wages. Essentially, the federal scheme views any transfer of property within the 90 days prior to an individual's bankruptcy filing to be a preferential transfer of "earned wages," rather than as attached wages. Because the Maryland exemption scheme does not contain a provision prohibiting the exemption of preferential transfers of earned wages (nor could it contain such a provision and avoid constitutional invalidation under the Supremacy Clause), it is

---

**7.** There is no dispute in the case sub judice that the trustee could have avoided the transfer of the property in this case.

clear to this Court that such property, because it would constitute an avoidable preferential transfer under the Federal Bankruptcy Code, even when, prior to bankruptcy, the property was classified as wage attachments, may be claimed by a bankruptcy debtor as an exemption.

Of course, a bankrupt debtor may only claim an exemption of the property at issue to the extent allowable under the Maryland exemption scheme. *See* 11 U.S.C. §§ 522(b)(1) & 522(h). *See also, In re Taylor,* 312 Md. 58, 63, 537 A.2d 1179, 1181–82 (1988); *In re Humphrey,* 165 B.R. at 580. That fully comports with the General Assembly's intent to limit the amount of the exemptions bankruptcy debtors may claim. Further, this interpretation harmonizes the dual purposes of allowing judgment debtors to emerge from bankruptcy with enough resources to make a "fresh start" and of placing creditors on the same level plane as it pertains to access to the debtor's estate.

Therefore, we answer the question, "[w]hether a debtor in bankruptcy may claim as exempt from the bankruptcy estate, pursuant to Maryland Code, Annotated, Courts and Judicial Proceedings § 11–504 (1998) wages previously garnished by a judgment creditor pursuant to Maryland Code Annotated, Commercial Law II §§ 15–601–607 (2000), when the garnishment is avoided as a preferential transfer," in the affirmative.

CERTIFIED QUESTION ANSWERED AS HEREIN SET FORTH. COSTS IN THIS COURT TO BE EVENLY DIVIDED.