Dear Mr. Guy Harriman, and Ms. Nancy Dacek,
You have requested our opinion concerning voter registration list maintenance procedures adopted by the State Board of Elections ("State Board") that are based on a State law that was amended and recodified by Chapter 572, Laws of Maryland 2005. In particular, you ask whether local boards of election should remove an individual from a voter registration list when a local board receives returned mail from the Post Office and the individual has not voted or appeared to vote in the past two general elections. You suggest that this removal procedure, as well as Chapter 572, may violate the Maryland Constitution and the Maryland Declaration of Rights, as construed by the Court of Appeals in Maryland Green Party v. Maryland Board of Elections ("Green Party"), 377 Md. 127,832 A.2d 214 (2003).
In our opinion, federal law requires that the State Board implement the removal procedure that the State Board has directed the local boards to follow. As recognized in the final judgment in the Green Party case, that law prevails over possibly inconsistent provisions of the State Constitution, in light of the Supremacy Clause of the United States Constitution. Therefore, the removal procedure does not violate any constitutional provisions or existing law.
 I Statutory Provisions
A. Federal Law
1. National Voter Registration Act
The National Voter Registration Act, 42 U.S.C. §§ 1973gg et seq. ("NVRA"), popularly known as the "motor voter law," was enacted in 1993 "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office." 42 U.S.C. § 1973gg(b)(1). The NVRA requires states to provide voter registration by: establishing a procedure to allow citizens "to register to vote in elections for Federal office by application made simultaneously with an application" for a driver's license, § 1973gg-2(a)(1); devising a procedure for voter registration by mail application, § 1973gg-2(a)(2); arranging for voter registration at certain designated sites, § 1973gg-2(a)(3), including "all offices in the State that provide public assistance," § 1973gg-5(a)(2)(A), and state-funded programs that provide services to persons with disabilities, § 1973gg-5(a)(2)(B); and designating "other offices within the State as voter registration agencies," such as libraries, city and county clerk's offices, unemployment compensation offices, and federal offices, § 1973gg-5(a)(3).[1]
The NVRA requires each state to conduct a general program that "makes a reasonable effort to remove the names of ineligible voters" from the official lists of voters when the voter has become ineligible due to a change of residence. 42 U.S.C. § 1973gg-6(a)(4)(B). However, state programs to ensure the maintenance of accurate voter registration lists may not result in the removal of voters from the rolls by reason of the person's failure to vote.42 U.S.C. § 1973gg-6(b)(2).
The NVRA also states that a State may not remove the name of a registrant from voter registration rolls on the ground that the registrant has changed residence except in two circumstances. First, a registrant may be removed from the rolls where the registrant confirms in writing that he or she has changed residence to a place outside the registrar's jurisdiction.[2] 42 U.S.C. § 1973gg-6(d)(1)(A). Second, a registrant may be removed from the rolls where: (1) the registrant has failed to respond to a notice informing the registrant of applicable voter registration law sent by forwardable mail containing a postage prepaid and pre-addressed return card; and (2) the registrant has not voted in two federal general elections following the mailing of the notice. 42 U.S.C. § 1973gg-6(d)(1)(B). This second procedure for removing individuals from a voter registration list is central to your inquiry.
2. Help America Vote Act
The Help America Vote Act of 2002 ("HAVA"),42 U.S.C. § 15301 et seq., went a step further than the NVRA. It established as a "minimum standard for accuracy of State voter registration records" the requirement that every state election system include a voter registration list maintenance procedure, consistent with the NVRA, under which "registrants who have not responded to a notice and who have not voted in 2 consecutive general elections for Federal office shall be removed from the official list of eligible votes, except that no registrant may be removed solely by reason of a failure to vote." 42 U.S.C. § 15483(a)(4) (emphasis added). Moreover, each state "shall implement . . . a single, uniform, official, centralized, interactive computerized statewide voter registration list . . . that contains the name and registration information of every legally registered voter in the State. . . ." 42 U.S.C. § 15483(a)(1)(A).[3]
In addition, each state "shall perform list maintenance with respect to the computerized list on a regular basis," including using procedures under NVRA to ensure that "only voters who are not registered or who are not eligible to vote are removed from the computerized list." 42 U.S.C. § 15483(a)(2)(A), (B)(ii).
B. Maryland Law
1. Legislation Prior to the Green Party Case
The General Assembly has attempted to conform the State election law to these federal law requirements. Following the adoption of the NVRA in 1993, the General Assembly immediately enacted legislation "to comply with the National Voter Registration Act . . ." Chapter 370, Laws of Maryland 1994 (purpose paragraph of bill title). That legislation incorporated in State law the removal procedures in the NVRA related to a registrant's change of residence outlined above. See Annotated Code of Maryland, Article 33, § 3-17A(b)(7) (1994 Supp). As a result of revisions of the Election Law in 1998 and 2002, these procedures were eventually recodified at Annotated Code of Maryland, Election Law Article ("EL"), § 3-504(e). Chapter 585, § 2, Laws of Maryland 1998; Chapter 291, § 4, Laws of Maryland 2002. That provision stated:
 The election director may not remove a voter from the registry on the grounds of a change of address unless:
 (1) the voter confirms in writing that the voter has changed residence to a location outside the county in which the voter is registered; or
 (2)(i) the voter has failed to respond to the confirmation notice; and
 (ii) the voter has not voted or appeared to vote (and, if necessary, corrected the record of the voter's address) in an election during the period beginning with the date of the notice through the next two general elections.
The 1994 legislation also provided for the creation of a list of "inactive voters" consisting of those who failed to respond to a confirmation notice. See Annotated Code of Maryland, Article 33, § 3-17A(b)(8) (1994 Supp.), later recodified as EL § 3-504(f). Registrants on the "inactive list" were to be restored to the registry upon written affirmation of residency or removed after failing to vote in two general elections.
2. The Green Party Litigation
In Green Party, a political party challenged several of Maryland's ballot access provisions for minor party candidates. While the primary issue before the Court of Appeals was the constitutionality of the Election Law's two-tier petitioning requirement,[4] the Court also addressed the Election Law's provision of a separate list of inactive voters and the State Board's removal of inactive voters from the registration rolls. In particular, the Court declared invalid on State constitutional grounds many of the provisions of EL § 3-504.[5] The Court held that "the Board's subsequent removal of such `inactive voters' from that registration list without affirmative proof that the voter has, in fact, moved to a different election district, cannot be squared with the constitutional provisions." Green Party, 377 Md. at 146 (emphasis in original).
The State Board moved for reconsideration of the Court's decision on the basis that the Board could not comply with both the Court's decision and federal law and that no record had yet been developed in the case on the State Board's voter registration file maintenance procedures. The Court of Appeals granted that motion in part and remanded the case to the circuit court. The Court indicated that it found nothing in the NVRA or HAVA justifying the maintenance of a list of "inactive voters." 377 Md. at 171-82. However, it left open the possibility that the federal statutes might mandate action by the State Board that would otherwise be inconsistent with the State Constitution. It remanded the case with the following direction to the circuit court:
 [T]he State Board of Elections should be given the opportunity to demonstrate, if it can, any circumstances where there is an irreconcilable conflict between Maryland Constitutional requirements and mandates of federal law. If, in the judgment of the Circuit Court, the Board makes such a showing, obviously, under the Supremacy Clause of the United States Constitution, the federal statutes should prevail and the new declaratory judgment should so reflect.
Id. at 182 (emphasis in original).
On remand, the circuit court found that, under HAVA, the relevant provisions of NVRA concerning removal of voters from the registration list were mandatory rather than permissive. Accordingly, the circuit court issued a declaratory judgment that the State Board comply with the mandates of the NVRA and HAVA and that the State conduct a program of voter registration file maintenance "that makes a reasonable effort to remove the names of ineligible votes [or `registrants who are ineligible to vote'] from the official lis[t] of eligible voters." That order also specifically provided:
 e. In accordance with the NVRA, HAVA, FEC guidance, and Election Law Article, §§ 3-502(3) and 3-504(e) and (f)(3), a registered voter to whom a confirmation notice has been mailed in accordance with Item d above or Item f below shall be removed from the voter registry if:
 (i) The voter confirms in writing that he or she has changed residence to a place outside the State; or
 (ii) The voter has failed to respond to the confirmation notice (or otherwise to affirm to election or voter registration officials the voter's continued residence in Maryland) and has not voted or appeared to vote in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for federal office that occurs after the date of the notice.[6]
Following the entry of the final declaratory judgment — which plaintiffs did not appeal — the State Board complied with the circuit court order by directing the local boards to remove voters pursuant to the NVRA procedures set forth in that order.
3. Legislation After the Green Party Decision
In 2005, the General Assembly enacted legislation that altered provisions of the Election Law to comply with HAVA, including the creation of a statewide voter registration list. Chapter 572, Laws of Maryland 2005. Chapter 572 also renumbered EL § 3-504(e) as EL § 3-502(e) but did not substantively change that provision other than to reflect that a statewide voter registration list had superseded separate county registration lists.[7]
 II Analysis
You have asked whether local boards of election should comply with the directions of the State Board based on EL § 3-502(e) — i.e., remove an individual from the voter registration list when a confirmation notice sent to the individual is returned by the Post Office and the individual has not voted in two general elections after the mailing of the notice — in light of the Green Party decision.
In Green Party, the Court determined that Maryland constitutional principles require "affirmative proof of a voter's change in domicile" and that "the option presented in [EL] § 3-504(e)(2), which allows an election official to remove a voter who does not respond to the confirmation notice and fails to vote in the prescribed period, does not satisfy the [constitutional] requirement. . . ."377 Md. at 181. However, when it granted in part the State Board's motion for reconsideration, the Court also recognized that the possibility of "an irreconcilable conflict" between Maryland constitutional law and federally mandated voter registration maintenance procedures and that, if such a conflict were found to exist, federal law would prevail under the Supremacy Clause of the United States Constitution.[8] 377 Md. at 182.
Under the Supremacy Clause, any State voter registration laws or State procedures for federal elections inconsistent with NVRA "are simply preempted and superseded." Ass'n of Community Orgs. For Reform Now v. Miller, 912 F.Supp. 976, 984 (W.D. Mich. 1995), aff'd, 129 F.3d 833 (6th Cir. 1997); see also Charles H. Wesley Educ. Foundation, Inc. v. Cox, 408 F.3d 1349, 1354 (11th Cir. 2005) (explaining that NVRA "overrides state law inconsistent with its mandates"); Ass'n of Community Orgs. For Reform Now v. Edgar, 56 F.3d 791, 797 (7th Cir. 1995) (upholding portion of decree which stated that "all provisions of the Illinois law that conflict with the [NVRA] are invalid"). Maryland law similarly recognizes that "a state law that is inconsistent with, or contrary to, the express language, or a primary purpose, of a federal law on the subject is preempted, and, thus, deemed invalid." Bank of America v. Stine, 379 Md. 76, 88, 839 A.2d 727 (2003) (other citations omitted).
Federal law plainly makes mandatory its voter removal procedure in federal elections. As noted above, HAVA uses the word "shall" in mandating that states adopt removal procedures, consistent with NVRA, for "registrants who have not responded to a notice and who have not voted in 2 consecutive general elections for Federal office." 42 U.S.C. § 15483(a)(4). The use of the word "shall" means that the statutory procedure is mandatory. Capital Mortgage Bankers, Inc. v. Cuomo, 222 F.3d 151, 155 (4th Cir. 2000) ("Use of the word `shall' is not ambiguous — the HUD Secretary is required to take the steps outlined above . . ."). Thus, federal law requires the State to follow list maintenance procedures currently set forth in EL § 3-502(e).
This conclusion is confirmed by guidance provided by the federal agency charged by Congress with interpreting the federal election laws. The Federal Election Commission ("FEC") is required to "provide information to the States with respect to [their] responsibilities . . . under the [NVRA]."[9] 42 U.S.C. § 1973gg-7(a)(4). The FEC has concluded that the list maintenance procedures are mandatory rather than permissive, noting that the NVRA "also requires States to conduct a uniform and non-discriminatory general program . . . to remove the name of an ineligible voter . . . upon a failure to respond to certain confirmation mailings along with a failure to offer to vote in any federal elections subsequent to the mailing." FEC 2001-02 Biannual Report to Congress at 16 (emphasis added). When the General Assembly enacted the predecessor of the current EL § 3-502(e) in 1994, it directed that "this Act shall be interpreted consistently with . . . interpretive documents issued by the [FEC]." Chapter 370, § 2, Laws of Maryland 1994. Maryland law, like federal law, also recognizes the deference to be given the construction of a statute by the agency administering the statute, when the applicable language is "based on a permissible construction of the statute." Sugarloaf Citizens Ass'n v. Dept. of Environment, 344 Md. 271, 313 (1996) (quoting Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 843-44 (1984));[10]
Blondell v. Baltimore City Police Dept., 341 Md. 680, 699 n. 15,672 A.2d 639 (1996) (quoting Holy Cross Hosp. v. Health Services,283 Md. 677, 685, 393 A.2d 181 (1978)).
While the federal statutes make these voter removal procedures mandatory only with respect to federal elections, the State Constitution contemplates a single voter registration list, "which Registration shall be conclusive . . . of the right of every person, thus registered, to vote at any election . . . Federal or State. . . ." Maryland Constitution, Article I, § 2. HAVA likewise requires the creation of "a single, uniform, official, centralized, interactive computerized statewide voter registration list." 42 U.S.C. § 15483(a)(1)(A). Cf. Green Party, 377 Md. at 150 (explaining that a dual registration system of active and inactive voters is "antithetical" to Article 7 of the Maryland Declaration of Rights).[11]
Presumably in light of these considerations, the circuit court in the Green Party case followed the course outlined by the Court of Appeals if it were to find an irreconcilable conflict between the federal election statutes and the State Constitution. As a result, the circuit court ordered, in part, that the State Board provide for the removal of an individual from the statewide voter registration list if the individual failed to respond to a confirmation notice and did not vote in two subsequent general elections. That is the procedure now set forth in EL § 3-502(e). In our view, that statute, which was enacted as part of Chapter 572, Laws of Maryland 2005, is consistent with federal law that preempts inconsistent provisions of the Maryland Constitution. Accordingly, it is constitutional.[12]
In accordance with its responsibilities under the State Election Law,[13] the State Board in turn has directed the local boards of election to adhere to the list maintenance procedures ordered by the circuit court. The State Board's instructions to local boards are thus consistent with the federal election statutes, EL § 3-502(e), and the final judgment in the Green Party case.
 III Conclusion
In sum, federal law requires that states implement prescribed voter registration list maintenance practices, including procedures for removing voters from the list. EL § 3-502(e), as recently amended, conforms to those requirements and to the final judgment in the Green Party case. Therefore, the removal procedure set forth in EL § 3-502(e) does not violate any constitutional provisions. The State Board's directions to local boards concerning these procedures are consistent with federal and State law.
 J. Joseph Curran, Jr., Attorney General
 Mark J. Davis, Assistant Attorney General
 Robert N. McDonald, Chief Counsel Opinions and Advice
[1] If a state fails to fulfill its obligations under the NVRA, the United States Attorney General may bring an action for declaratory or injunctive relief. 42 U.S.C. § 1973gg-9(a). An individual aggrieved by a state's violation of the NVRA who provides written notice to the state's chief election official may bring a civil action 90 days following the state's receipt of notice. 42 U.S.C. § 1973gg-9(b). If the violation occurs within a limited period preceding a federal election, the 90-day period is modified or waived. Id.
[2] In 2001, the General Assembly enacted legislation that provided that a voter, once registered in Maryland, remains registered when he or she moves to another Maryland county. Chapter 424, Laws of Maryland 2001 codified at EL § 3-101(d). That legislation effectively rendered Maryland a single "registrar's jurisdiction" for purposes of the NVRA, so that its removal procedures are not triggered by a voter's in-state change of residence. This provision was recodified as EL § 3-101(e) in 2005. Chapter 572, Laws of Maryland 2005.
[3] Pursuant to 42 U.S.C. § 15483(d)(1)(B), Maryland was granted a waiver until January 1, 2006, for its computerized system to meet federal requirements.
[4] Citing the equal protection component of Article 24 of the Maryland Declaration of Rights, the Court declared unconstitutional EL § 5-703(e), which required that a minor political party candidate be nominated by a petition signed by not less than 1% of eligible voters, in addition to the party formation petition containing the signatures of 10,000 voters. Green Party, 377 Md. at 164-65.
[5] The Court struck down, as codified in former Article 33, §§ 1-101(gg),3-504(e)(2), 3-504(f)(1), 3-504(f)(3), and 3-504(f)(5) of the Election Law.377 Md. at 151. Section 1-101(gg), which had since been recodified as EL § 1-101(mm), defined "registered voter" to "not include an individual whose name is on a list of inactive voters." The Court based this ruling on Article I of the Maryland Constitution and Article 7 of the Maryland Declaration of Rights.
[6] The declaratory judgment also provided in pertinent part that:
 d. In accordance with the NVRA, HAVA, specific guidance of the Federal Election Commission (the "FEC"), and Election Law Article, § 3-504(f)(1), a registered voter shall be placed in "inactive" status when the local board of elections where the voter is currently registered mails an election mailing to the voter by non-forwardable mail, that mailing is returned by the United States Postal Service because it cannot be delivered, and the returned mailing bears an endorsement indicating a forwarding address outside the State, if:
 (i) The local board then mails a confirmation notice complying with § 8(d)(2) of the NVRA, 42 U.S.C. § 1973gg-6(d)(2), and Election Law Article, § 3-504(c); and
 (ii) The voter has not responded to the confirmation notice within a reasonable time.
[7] The legislation also repealed or amended other provisions held unconstitutional by the Court of Appeals in the Green Party case that disqualified signatures of inactive voters from being counted on petitions.
[8] The Supremacy Clause states:
 This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
United States Constitution, Article VI, Clause 2. In much the same language, Article 2 of the Maryland Declaration of Rights acknowledges the supremacy of the federal constitution.
[9] Title II of HAVA created an Election Assistance Commission ("EAC") and Title VIII of HAVA transferred many of the FEC's functions to the EAC. 
[10] While the FEC's report to Congress may not merit Chevron-type deference, reasonable agency interpretations carry "at least some added persuasive force" even where Chevron is inapplicable. United States v. Mead Corp., 533 U.S. 218, 235 (2001) (quoting Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 136 (1997)).
[11] Even if the law permitted the maintenance of separate state and federal lists, it would make little sense to administer two such lists. Candidates for federal office appear on the ballot at every statewide general election held in Maryland. It would be an administrative nightmare to screen voters appearing at the polls for a general election to determine in which election they were entitled to vote.
[12] This Office previously approved the bill that became Chapter 572 for constitutionality and legal sufficiency. See Letter of Attorney General J. Joseph Curran, Jr. to Governor Robert L. Ehrlich, Jr. concerning House Bill 723 (May 12, 2005).
[13] The State Board is charged with the duty to "manage and supervise elections in the State and ensure compliance with the requirements of this [Elections] article and any applicable federal law by all persons involved in the elections process." EL § 2-102(a). In particular, the State Board shall "direct, support, monitor, and evaluate the activities of each local board," EL § 2-102(b)(2), and, at a statewide biennial meeting for members of the local boards, "instruct the members of the local boards, the election directors, the counsel to local boards, and the other employees who are in attendance concerning their duties in the conduct of elections." EL § 2-104(c)(2). "Consequently, the supervisory authority of the State Board over the local boards is pervasive." State Admin. Bd. of Election Laws v. Board of Supvrs., 342 Md. 586, 597, 679 A.2d 96 (1996). *Page 145