[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10675

_____

PDVSA US LITIGATION TRUST,

Plaintiff-Appellant,

PETROLEOS DE VENEZUELA, S.A. (PDVSA),

Intervenor Plaintiff-Appellant,

*versus*

LUKOIL PAN AMERICAS LLC,
LUKOIL PETROLEUM LTD,
COLONIAL OIL INDUSTRIES INC.,

2                    Opinion of the Court                    22-10675

COLONIAL GROUP, INC.,
GLENCORE LTD., et al.,

                                              Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cv-20818-DPG

_____

Before WILLIAM PRYOR, Chief Judge, MARCUS, Circuit Judge, and
MIZELLE,* District Judge.

WILLIAM PRYOR, Chief Judge:

    This appeal involves a nonjusticiable political question: who
has the authority to litigate in the name of the Venezuelan state oil
company, Petróleos de Venezuela, S.A. The underlying action,
brought by a litigation trust on behalf of Petróleos de Venezuela,

_____

* Honorable Kathryn Kimball Mizelle, United States District Judge for the
Middle District of Florida, sitting by designation.

alleged conspiracy, antitrust, cybercrime, and fraud claims against various individuals and entities. After the district court dismissed the action for lack of standing and this Court affirmed, an entity purporting to speak for Petróleos de Venezuela sought to substitute itself as the real party in interest. The entity's board was appointed by Nicolás Maduro, who claims to be the president of Venezuela. But the United States Department of State has concluded that Maduro is not Venezuela's legitimate political leader. The district court denied the motion. We affirm because the district court could not grant the motion without addressing a nonjusticiable political question.

## I. BACKGROUND

The action underlying this appeal involves conspiracy, antitrust, cybercrime, and fraud claims brought on behalf of the Venezuelan state oil company, Petróleos de Venezuela, S.A. The plaintiff was a litigation trust established to pursue these claims. The movant that seeks substitution as the real party in interest purports to speak for Petróleos de Venezuela itself. In its complaint, the trust alleged that a collective of oil companies, oil traders, banks, and corrupt Venezuelan officials conspired to profit at Petróleos de Venezuela's expense.

Two key defendants—Venezuelan nationals Francisco Morillo and Leonardo Baquero—along with numerous co-conspirators allegedly engaged in a variety of fraudulent and anticompetitive activities. Morillo and Baquero purportedly formed an energy

consulting firm, an energy advisory and trading firm, and a series of shell companies. The complaint alleged that the conspirators bribed Petróleos de Venezuela officials to provide inside information, fix prices, rig bids, "accept artificially low prices" for sales, "pay inflated prices" for purchases, "overlook" products and services that Petróleos de Venezuela paid for but never received, and "fraudulently conceal" what was owed to Petróleos de Venezuela. It further alleged that Morillo and Baquero delivered inside information about competing bids and Petróleos de Venezuela's future tenders to their oil-company clients, giving those companies an unfair advantage over their competitors, including competitors in the United States. The clients allegedly compensated Morillo and Baquero by paying "commissions." The complaint alleged violations of various state and federal antitrust, conspiracy, and cybercrime statutes, as well as other theories of civil liability.

At the outset of this litigation, a trust was "established pursuant to the laws of New York to investigate and pursue claims against [these] Defendants and others." The entity that now seeks substitution contends that it initially relied on the trust "so that efforts to hold [the alleged conspirators] accountable could proceed without interference from the political and economic instability and rampant corruption in Venezuelan government and society." In theory, the trust could distribute any damages awarded in a manner consistent with United States sanctions against Venezuela.

But the legitimacy of the trust immediately became a point of contention. Initially, the trust moved for a preliminary injunction and a temporary restraining order to prevent the alleged conspirators from destroying records and hiding or spending the proceeds of their alleged illegal activity. The alleged conspirators filed a motion to dismiss for lack of standing. The alleged conspirators argued that the trust agreement could not be authenticated and that it was void under New York law in part because it violated the ban on champerty. The law on champerty prohibits the assignment of claims "with the intent and for the primary purpose of bringing a lawsuit." See Justinian Cap. SPC v. WestLB AG, 65 N.E.3d 1253, 1254 (N.Y. 2016). They also argued that the validity of the trust under Venezuelan law presented a nonjusticiable political question that, if reached, must be decided against the trust—both because the signatories lacked authority to speak for Petróleos de Venezuela and because the agreement was not approved by the National Assembly.

The dispute over the agreement's validity under Venezuelan law is connected to a broader controversy over the legitimate political leadership of Venezuela. The United States ceased to recognize the government of Nicolás Maduro, who purports to serve as president of Venezuela, in August 2017. See Press Statement, Heather Nauert, Dep't Spokesperson, U.S. Dep't of State (Aug. 18, 2017). Instead, the United States Department of State recognizes the National Assembly elected in 2015 as "the last remaining democratic institution" in that country. See Press Statement, Ned Price,

6                    Opinion of the Court                    22-10675

Dep't Spokesperson, U.S. Dep't of State (Jan. 3, 2023) [hereinafter Price 2023]; *see also* Exec. Order No. 13,857, 84 Fed. Reg. 509 (Jan. 30, 2019) (recognizing the National Assembly as "the only legitimate branch of government duly elected by the Venezuelan People"). It also recognized the former president of that Assembly, Juan Guaidó, as interim president of Venezuela, *see* Readout, Ned Price, Dep't Spokesperson, U.S. Dep't of State (May 2, 2022), until the Assembly recently voted to remove him and replace his interim government with a committee. Early statements by the Biden Administration indicate that the Department of State continues to recognize the National Assembly. *See* Price 2023, *supra*. The executive branch has given no indication that it will change its longstanding position that the Maduro government is illegitimate. *See id.*

Two different boards of directors, appointed by the two persons who claimed to be the president of Venezuela, purport to govern Petróleos de Venezuela. Maduro officials approved the creation of the purported litigation trust and the commencement of the underlying action. The trust agreement was signed in July 2017, one month before the United States ceased to recognize the Maduro government. *See* Nauert, *supra*. The initial complaint was filed in March 2018. In April 2018, the National Assembly denounced the trust as unconstitutional and stated that Reinaldo Muñoz Pedroza—Maduro's attorney general and one of the purported signers of the trust agreement—lacked the authority to form the trust.

After a hearing and discovery on the standing question, the magistrate judge recommended dismissal. The trust objected, but the district court adopted the magistrate judge's report and recommendation in part and dismissed the action for lack of subject-matter jurisdiction.

The district court reasoned that the litigation trust lacked standing because the trust was void and the trust agreement was inadmissible. It ruled that the trust agreement was inadmissible due to a lack of authenticated signatures. And it concluded that even if the agreement were admissible, it violated the New York law against champerty. The district court also stated that in the light of "the National Assembly's declaration that the Trust Agreement is unconstitutional," ruling that the trust was valid "would be ruling in direct contravention to a resolution by a foreign sovereign—likely in violation of the Act of State doctrine." But it declined to rest its judgment on that basis. On appeal, this Court affirmed on the ground that the agreement violated the New York law on champerty. *PDVSA US Litig. Tr. v. Lukoil Pan Ams., LLC*, 991 F.3d 1187, 1193, 1195, 1197 (11th Cir. 2021).

In response, an entity that purports to speak for Petróleos de Venezuela moved to reopen the judgment and to intervene or be substituted as the real party in interest under Federal Rules of Civil Procedure 60(b), 24(a)(2), and 17(a). The entity's board was appointed by Maduro, not Guaidó. By the time the Maduro entity filed the motion, nearly three years had passed since the alleged

conspirators first disputed the trust's standing and more than two had passed since the district court dismissed the action for lack of standing.

The district court denied the motion. It stated that "[w]hile a motion to intervene may have been timely and appropriate much earlier in the case, it must be denied because the [district] [c]ourt does not have subject matter jurisdiction." It reasoned that it had already dismissed the action for lack of jurisdiction, and this Court had affirmed that order. The district court also determined that the motion was untimely under Rule 17.

## II. STANDARD OF REVIEW

We review *de novo* issues of subject-matter jurisdiction. *See United States v. Grimon*, 923 F.3d 1302, 1305 (11th Cir. 2019). And this Court "may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017).

## III. DISCUSSION

The district court could not grant the Maduro entity's motion to substitute without addressing a nonjusticiable political question. Rule 17 guarantees that "the *real party in interest*" will be allowed "a reasonable time . . . to ratify, join, or be substituted into the action." FED. R. CIV. P. 17(a)(3) (emphasis added). Two boards

of directors purport to legally control Petróleos de Venezuela: one appointed by Maduro and one appointed by Guaidó. The Maduro entity asked the district court to determine whether it had the authority to prosecute this action in the name of Petróleos de Venezuela as the real party in interest. That question is nonjusticiable.

From the Founding to today, the Supreme Court has acknowledged that some questions can be answered only by the political branches. Chief Justice John Marshall in *Marbury v. Madison* explained that "[b]y the constitution of the United States, the President is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character, and to his own conscience." 5 U.S. (1 Cranch) 137, 165–66 (1803). And the Supreme Court has repeatedly held that it is the role of the political branches, not the courts, to identify the legitimate political leadership of a foreign country. "Who is the sovereign, *de jure* or *de facto*, of a territory is not a judicial, but is a political question, the determination of which by the legislative and executive departments of any government conclusively binds the judges . . . ." *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918) (citation omitted); *see also Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410 (1964) ("Political recognition is exclusively a function of the Executive."), *superseded on other grounds by statute*, 22 U.S.C. § 2370(e)(2); *Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2086, 2094 (2015) (explaining that because "the Nation must have a single policy regarding which governments are legitimate in the eyes of the

United States and which are not," the President's "power to recognize foreign nations and governments" is exclusive).

For more than five years, the executive branch has taken the position that the Maduro government is illegitimate. *See* Nauert, *supra*. And, in its motion, the Maduro entity conceded that its board was appointed by Maduro. The judicial branch is bound to accept the President's statement that the 2015 National Assembly, not the Maduro government, is the legitimate political authority in Venezuela. *Oetjen*, 246 U.S. at 302; *see* Price, *supra*. And under the act-of-state doctrine, the district court is barred "from inquiring into the validity of a recognized foreign sovereign's public acts committed within its own territory." *Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1293 (11th Cir. 2001) (citation omitted). The district court cannot question the validity of then-President Guaidó's appointment of an alternative board of directors. So, under the political-question doctrine, it was powerless to grant the Maduro entity's motion to substitute the entity as the real party in interest in contravention of the position taken by the United States Department of State.

The Maduro entity argues that it does not matter which board of directors is authorized to speak for Petróleos de Venezuela. It contends that "whether [the] board comprises Maduro appointees or Guaidó appointees is immaterial to this litigation which addresses the multibillion-dollar injury suffered by [Petróleos de Venezuela] as a corporate entity." It suggests that "this Court

should hold in abeyance the distribution of any recovery in this action until the recognition of [Petróleos de Venezuela] is resolved."

We are not persuaded. To be sure, no one disputes that "Petróleos de Venezuela" is the real party in interest, and no one disputes that there is functionally only one "Petróleos de Venezuela." Instead, the question is whether the Maduro entity had the authority to bring suit in Petróleos de Venezuela's name. A company may be an independent juridical entity, but it can speak only through its officers and directors. The identities of those officers and directors matter. Even if the Guaidó-appointed board might desire the same outcome in this litigation, as the Maduro entity contends, a party is entitled to decide if and how it wishes to litigate. No Guaidó-appointed officials have authorized this suit or the Maduro entity's motion to substitute, nor has any entity they control opted to bring suit itself.

The Maduro entity seems to suggest that by granting its motion the district court would simply allow it to serve as a placeholder. It states that it seeks to "preserve the claims asserted . . . against possible expiration of the statute of limitations." And it suggests that the district court could later distribute any "recovery . . . [when] the recognition of [Petróleos de Venezuela] is resolved."

This argument fails. As this Court has explained, "Rule 17 was not promulgated to allow lawyers to file placeholder actions . . . to keep a limitations period open while they investigate their claims and track down the proper parties." *In re Engle Cases*, 767

F.3d 1082, 1113 (11th Cir. 2014). The district court cannot grant a motion for substitution by an entity that is not authorized to litigate in Petróleos de Venezuela's name in hopes that the proper party will eventually request substitution.

Finally, the Maduro entity also requests that we remand this action to allow the district court to conduct a further factual inquiry into "who may properly represent the interests of [Petróleos de Venezuela] in light of the complex and ever-changing political situation within Venezuela" and into the "position of the United States Government." It suggests that relations between the United States and Maduro's government are "thawing," so permitting it to litigate in the name of Petróleos de Venezuela might be consistent with American foreign-policy interests. But federal courts are not empowered to decide what is consistent with American foreign-policy interests. The district court would not have jurisdiction to conduct the requested inquiry on remand. And even if the Department of State declared today that the Maduro entity is authorized to bring suit in Petróleos de Venezuela's name, we would still affirm because, under Article III, a justiciable case or controversy must exist "through all stages of the litigation," including "at the time the complaint is filed." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1975 (2016) (citation omitted).

22-10675    Opinion of the Court    13

## IV. CONCLUSION

The order denying the motion to reopen and substitute is **AFFIRMED**.