[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13567

Non-Argument Calendar

_____

NAKAVA LLC,
a Florida Limited Liability Company,

Plaintiff Counter Defendant-Appellee,

*versus*

THE SOUTH PACIFIC ELIXIR COMPANY,
a Florida for Profit Corporation,

Defendant Counter Claimant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 9:19-cv-81128-AHS

_____

Before ROSENBAUM, JILL PRYOR, and MARCUS, Circuit Judges.

PER CURIAM:

This appeal concerns the affirmative defense of abandonment in trademark suits. After a bench trial, the district court found that the South Pacific Elixir Company ("SPEC") infringed Nakava LLC's trademark of the word "Nakava" in violation of 15 U.S.C. § 1114(1)(a). The district court later denied SPEC's post-trial motions, which essentially claimed that the record proved Nakava LLC abandoned the mark. On appeal, SPEC argues that the district court erred in concluding that Nakava LLC did not abandon the mark and offers two theories of abandonment: (1) nonuse, and (2) naked licensing. But, as the district court found, the record does not support nonuse. Moreover, SPEC is estopped from arguing a naked license under these facts. After careful review, we affirm.

**I.**

The facts, as presented at trial and found by the district court after a bench trial, are largely undisputed. In 2001, Jeffrey Bowman, Diane Lysogorski, and Laurent Olivier formed SPEC to operate a bar in South Florida that sold beverages made from the kava root. SPEC initially named the bar "Nakamal" -- the word for a traditional meeting place for drinking kava on the South Pacific island of Vanuatu -- and the entrepreneurs decided to pursue franchising opportunities. After the U.S. Patent and Trademark Office

denied SPEC's application to trademark "Nakamal," however, the company trademarked the name "Nakava" -- a combination of Nakamal and kava.

A few years passed, and SPEC's founders were advised to create a limited liability company. They did so, naming it Nakava LLC. On May 25, 2005, SPEC assigned the mark "Nakava" to Nakava LLC. Nakava LLC hoped to sell franchises for kava bars operating under the mark and to sell kava bearing the mark to those franchises. Nakava LLC permitted SPEC to operate a bar under the mark as its first franchise, but the parties did not execute a written license for SPEC's use.

Despite Nakava LLC's best efforts, the franchise business model flopped, and the company switched focus to selling kava online. It is undisputed that from 2005 to 2015 and from 2019 to 2022, Nakava LLC sold its kava online using the mark. The district court also found that Nakava LLC sold its kava with the mark from 2016 to 2018, although -- as discussed below -- SPEC disputes this finding.

In 2012, the relationship between the founders of the two companies fell apart, and, in 2015, Olivier sold his stake in SPEC to a group of investors ("Olivier's investors"). Around that time, the founders filed several lawsuits against each other. The litigation began when Olivier's investors sent a letter to Bowman, asking to inspect SPEC's books and records. But that letter did more. It threatened to contact the Internal Revenue Service and other agencies and demanded a full forensic accounting for ten years. In

addition, in the words of the district court, it added "the following particularly menacing passage":

> My clients plan to come on to the premises to review the books and records and determine its condition. They may use force of arms if necessary.
>
> . . .
>
> What is your present address and place(s) of employment.

Eventually, though, Bowman and SPEC decided to walk away from the litigation to save time and money. In December 2015, the parties entered into an Agreed Order, which stated that Bowman and Lysogorski relinquished control of SPEC to Olivier's investors.

Bowman understood the Agreed Order to resolve the SPEC litigation, but instead more claims popped up. In 2016, Olivier's investors brought new claims against Bowman, including actions against him in his individual capacity for defamation, and Olivier sued Nakava LLC and his former SPEC cofounders, Bowman and Lysogorski. Concerned over the threat of arms and the prospect that Olivier would attempt to claim ownership over the mark, Nakava LLC removed the mark from its retail packaging that same year. According to testimony and other evidence at trial, however, the company continued to use the mark on its wholesale products.

The litigation between Bowman and Olivier's investors settled in January 2019, and Olivier dismissed his case against Nakava LLC the next month. Nakava LLC then sent two letters to SPEC,

terminating its rights to use the mark and demanding compliance by May 30, 2019. But SPEC continued to use the mark. So, on August 9, 2019, Nakava LLC sued SPEC for trademark infringement in the United States District Court for the Southern District of Florida.

On January 10, 2022, the parties filed a joint pretrial stipulation. Soon thereafter, the district court conducted a two-day bench trial. A few months later, the district court found in favor of Nakava LLC. The district court found that Nakava LLC never abandoned the mark, and concluded that SPEC infringed Nakava LLC's property interest in the mark.

SPEC then moved the district court, pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), to alter the judgment. SPEC argued that it proved at trial that Nakava LLC abandoned the mark through naked licensing, and that the district court overlooked evidence that Nakava LLC abandoned the mark through nonuse. Nakava LLC responded that SPEC failed to follow the proper procedure in filing its motion and that the motion improperly sought to relitigate the case and raised new arguments unaddressed at trial. In a short order, the district court denied SPEC's motion. The court found that SPEC had attempted to relitigate the case. The motion, however, did not point to any new evidence nor did it reveal any manifest errors of law or fact.

SPEC timely appealed the district court's findings of fact and conclusions of law and its order denying the post-trial motions.

**II.**

Following a bench trial, we review a district court's findings of fact for clear error and its conclusions of law *de novo*. *U.S. Commodity Futures Trading Comm'n v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1322 (11th Cir. 2018). "Clear error is a highly deferential standard of review" that will not lead to reversal unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Eggers v. Alabama*, 876 F.3d 1086, 1094 (11th Cir. 2017) (quotations omitted). We review the denial of both Rule 59 and Rule 60(b) motions for abuse of discretion. *Arthur v. King,* 500 F.3d 1335, 1343 (11th Cir. 2007); *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1309 (11th Cir. 2003).

## A.

First, we are unpersuaded by SPEC's claim that Nakava LLC abandoned the mark through nonuse. Under the Lanham Act, a trademark is abandoned "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. "Thus, a defendant must establish two elements in order to show that a plaintiff has abandoned his trademark: [1] that the plaintiff has ceased using the mark in dispute and [2] that he has done so with an intent not to resume its use." *Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329 (11th Cir. 2008) (alterations in original) (quotations omitted). Nonuse for three consecutive years is *prima facie* evidence of abandonment, which creates a rebuttable presumption of an intent not to resume use. *Id.* at 1329–30; *see also* 15 U.S.C. § 1127.

SPEC argues that the district court clearly erred by finding that Nakava LLC used the mark from 2016 to 2018. It claims that the evidence showed that Nakava LLC did not use the mark for those three years, and that Nakava LLC failed to rebut the presumption established by that nonuse. This argument is without merit.

For starters, SPEC failed to meet its burden to prove nonuse. Abandonment by nonuse "works an involuntary forfeiture of rights," so defendants "face a stringent, heavy, or strict burden of proof." *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1175 (11th Cir. 2002) (quotations omitted). If a defendant meets that heavy burden, then the burden of production shifts to the plaintiff to show an intent to resume use, but "the ultimate burden of persuasion on the issue of abandonment remains with the defendant." *Id.* at 1176–77. Here, SPEC failed to meet its initial burden of production, let alone its ultimate burden of persuasion. It presented no evidence at all about nonuse. In fact, its corporate representative admitted that he lacked "any knowledge of anything Nakava LLC has done other than what's in the public domain and on the internet."

Further, as for SPEC's argument that Nakava LLC ceased using the mark from 2016 to 2018, the district court expressly made a finding of fact that Nakava LLC used the mark from 2005 to 2022. "[A] finding of fact is clearly erroneous only if the record lacks substantial evidence to support it." *Johnson v. Hamrick*, 296 F.3d 1065, 1074 (11th Cir. 2002) (quotations omitted). The district court's

finding here was supported by the record. Nakava LLC offered pictures of wholesale packages with the mark, as well as invoices proving that this wholesale product was sold during the relevant time period. And Bowman testified that Nakava LLC sold the wholesale kava with the mark on the packaging throughout this period.

SPEC does not dispute these factual findings directly. Instead, it claims that the wholesale invoices, which have Nakava LLC's name on them, are "not sufficient to constitute bona fide 'use'" under the Lanham Act. The Lanham Act defines "use in commerce" to include a mark's display on the goods or its container, "or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale." 15 U.S.C. § 1127. SPEC says that this definition precludes Nakava LLC from using invoices to prove use, because the wholesale goods could have borne the mark. But SPEC is mistaken. The evidence at trial showed that the wholesale goods were branded with the mark, and the invoices were simply introduced as evidence that the branded wholesale goods were sold in commerce.

But even if SPEC had met its initial burden of proving nonuse, it failed to meet its burden to prove that Nakava LLC did not intend to resume use. The district court found that "the evidence at trial demonstrated that Nakava LLC intended to resume use of the Mark once litigation with Defendant was substantially resolved," thus rebutting any presumption that Nakava LLC's nonuse may have created. SPEC's only challenge to this finding on appeal is that an intent to resume use after the three years of

nonuse is irrelevant.  But that argument is wrong as a matter of law.  As we've already noted, evidence of nonuse during the three-year statutory window shifts the burden of production to Nakava LLC to show it "either used the mark during the statutory period or intended to resume use." *Nat. Answers*, 529 F.3d at 1330 (quotations omitted).  The intent to resume use "cannot be far-flung or indefinite" and must be "within the reasonably foreseeable future." *Id.* at 1329 (quotations omitted).  But contrary to SPEC's suggestion, there is no requirement in this Circuit that Nakava LLC needed a plan to resume use within the statutory three-year window of nonuse.  And the district court found that Nakava LLC sold branded products after settling its litigation with SPEC and it credited Bowman's testimony that he always intended to continue to use the mark.  SPEC failed to rebut this evidence, and, accordingly, did not satisfy its burden to prove an intent not to resume use.

All told, SPEC did not meet its heavy burden to prove abandonment through nonuse.  The district court did not clearly err in its findings of fact, nor did it err in its conclusions of law, nor, finally, did it abuse its discretion in denying the post-trial motions as to this issue.

## B.

We are also unconvinced by SPEC's claim that Nakava LLC abandoned the mark through a naked license.  "[T]he law imposes a duty upon a licensor (such as a franchisor) to supervise a licensee's use of the licensor's own trademark." *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1519 (11th Cir. 1992) (emphasis

omitted).  Because "the law attempts to ensure that the public will not be deceived when purchasing goods and services that relate to that trademark," *id.*, an owner of a trademark "abandon[s] its mark through 'naked licensing', or the failure to properly supervise its licensee's use of the mark," *Pro. Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 671 (5th Cir. 1975).[1]  But "a licensee is estopped to contest the validity of the licensor's title during the course of the licensing arrangement."  *Id.*  That is, "a former trademark licensee" (here, SPEC) may challenge the title of the licensor (here, Nakava LLC) "on facts which arose *after* the contract has expired," but not on facts *before* expiration.  *Id.* (emphasis added).

Here, the district court made a finding of fact that SPEC used the mark under Nakava LLC's implied license from 2005 to 2019, and this finding is not clearly erroneous.  Indeed, Bowman testified that Nakava LLC gave SPEC permission to use the mark for an indefinite period of time, and that SPEC paid a fee for its use.  Then, in 2019, Nakava LLC revoked that license, eventually leading to the present case.  Because "a licensee is estopped to contest the validity of the licensor's title during the course of the licensing arrangement," SPEC is estopped from arguing that Nakava LLC gave up control of the trademark from 2005 to 2019.  *Id.*  In other words, during the relevant period, SPEC, "by virtue of the agreement, recognized [Nakava LLC's] ownership."  *Id.*  Moreover, we are

---

[1] All Fifth Circuit decisions handed down before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

unpersuaded by SPEC's unsupported and undeveloped argument that only an express license can estop a naked license defense. SPEC cites no law -- and we found none -- holding as much.[2]

Because SPEC failed to provide any evidence that Nakava LLC abandoned the mark through a naked license, it fell short of its burden. As a result, the district court did not err in finding for Nakava LLC, nor did it abuse its discretion in denying the post-trial motions.

**AFFIRMED.**

---

[2] SPEC also argues that Nakava LLC forfeited its estoppel argument by failing to raise it below. But we can exercise our discretion to consider an issue where, as here, its "proper resolution is beyond any doubt." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004) (quotations omitted). This is particularly appropriate in this case, where the relevant facts are not in dispute and the legal issues are straightforward. "And this Court may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *PDVSA US Litig. Tr. v. LukOil Pan Ams. LLC*, 65 F.4th 556, 562 (11th Cir. 2023) (quotations omitted).